IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS POLICY INSTITUTE and THE TECHNOLOGY & MANUFACTURING ASSOCIATION, | Case No. 1:24-cv-06976 |
| Plaintiffs, | Hon. Judge Franklin U. Valderrama |
| v. | |
| JANE R. FLANAGAN, *in her official capacity as Director of the Illinois Department of Labor*, | **First Amended Complaint** |
| Defendant. | |

1.      The First Amendment protects the free-speech rights of both employees and employers—including the employer's right to speak to employees about matters of importance to the employer.

2.      Nonetheless, the State of Illinois has enacted a law, misleadingly titled the "Worker Freedom of Speech Act," that forbids employers from speaking to their employees about "religious or political matters" if listening or attending a meeting in which such matters are communicated is a condition of their employment—even when such matters are relevant to the employer's business.

3.      And the Act defines "political matters" broadly—to encompass not only speech about campaigns and elections, but also speech "relating to . . . proposals to change legislation, proposals to change regulations, proposals to change public policy, and the decision to join or support any political party or political, civil, community, fraternal, or labor organization."

1

4.     Plaintiff Illinois Policy Institute ("the Institute") is a 501(c)(3) nonprofit organization that engages in research related to public policy from a perspective that favors, among other things, civil and personal liberties; effective, efficient, honest, and transparent government; limited government; free markets; and workers' freedom to choose whether to join a labor union.

5.     The Institute regularly conducts mandatory staff meetings at which the organization's views on questions of public policy are expressed.

6.     Plaintiff Technology & Manufacturing Association ("TMA") is a 501(c)(6) independent trade organization that focuses on assisting and promoting small and mid-size manufacturers, by, among other things, providing information, training, resources, and advocacy for and on behalf of its members.

7.     TMA brings this suit on behalf of its manufacturing business members, some of whom communicate religious and political matters to their employees in mandatory meetings or as a condition of those employees' employment.

8.     The Act now makes Plaintiffs' mandatory meetings that include political or religious matters unlawful.

9.     This restriction on the Institute's ability to speak to its employees about the very subject matter of the organization's mission violates the Institute's right to free speech under the First Amendment.

10.     And the restriction on TMA's members' ability to speak to their employees about religious or political matters if listening to such communications are a

condition of employment violates TMA's members' free speech rights under the First Amendment.

11.     Plaintiffs therefore seeks declaratory relief and preliminary and permanent injunctive relief against the Director of the Illinois Department of Labor—the agency charged with enforcing the Act—to protect its right to freedom of speech.

## Parties

12.     Plaintiff Illinois Policy Institute is a 501(c)(3) nonprofit organization incorporated in Illinois, with its office in Chicago, Illinois.

13.     Plaintiff the Technology & Manufacturing Association is a 501(c)(6) organization incorporated in Illinois, with its office in Schaumburg, Illinois. TMA brings this suit based on the associational standing of its members.

14.     Defendant Jane R. Flanagan is the Director of the Illinois Department of Labor and is sued in her official capacity. The Illinois Department of Labor is the Illinois state agency charged with enforcing the "Worker Freedom of Speech Act."

## Jurisdiction and Venue

15.     This case raises claims under the First and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

16.     Venue is proper because a substantial portion of the events giving rise to the claims occurred in the Northern District of Illinois. 28 U.S.C. § 1391(b)(2).

## Facts

### Illinois's Ban on Employer Political and Religious Speech

17.     Illinois Senate Bill 3649, enacted as Public Act 103-0722 and effective January 1, 2025, prohibits employers from "tak[ing] any adverse employment action" against an employee who refuses to attend meetings or receive communications from the employer intended "to communicate the opinion of the employer about religious matters or political matters." § 15(1).

18.     The Act provides for enforcement by several parties: not only aggrieved employees, but also that Illinois Department of Labor or any other "interested party."

19.     Section 20 of the Act allows any "aggrieved employee" to bring a civil action to enforce its provisions. In such an action, a court may award "all appropriate relief, including injunctive relief, reinstatement to the employee's former position or an equivalent position, back pay, [and] reestablishment of any employee benefits." § 20. The court may also award attorney's fees and costs to a prevailing employee. *Id*.

20.     Even if an "aggrieved employee" does not bring an action, the Act further empowers the Department of Labor to enforce the Act and "institute the actions for penalties" under the Act, including a civil penalty of $1,000 for each violation payable to the Department. Each employee subject to the violation of the Act constitutes a separate violation. § 25.

21.     In addition, the Act allows any "interested party" to submit a complaint with the Department "[u]pon a reasonable belief that an employer" violated the Act.

"Interested party" is defined as "an organization that monitors or is attentive to compliance with public or worker safety laws, wage and hour requirements, or other statutory requirements." § 10.

22.     After the Department issues a right to sue letter, or 180 days after the service of the complaint, the interested party may initiate a civil action for penalties against the employer. "An interested party who prevails in a civil action shall receive 10% of any statutory penalties assessed, plus any attorney's fees and expenses in bringing the action." § 25.

23.     The Act also requires an employer, within 30 days after the effective date of the Act, to post a notice of employee rights under the Act. § 10.

24.     The Act defines "religious matters" as "matters relating to religious belief, affiliation, and practice and the decision to join or support any religious organization or association." § 10.

25.     The Act defines "political matters" as "matters relating to elections for political office, political parties, proposals to change legislation, proposals to change regulations, proposals to change public policy, and the decision to join or support any political party or political, civic, community, fraternal, or labor organization." § 10.

26.     The Act provides several exceptions.

27.     Employers may communicate with their employees about religious and political matters, but only if such communication is "voluntary," § 35(2)—meaning that the action is not incentivized by a positive change in any employment

5

condition, including any compensation or benefit and that the action is not taken under threat of a negative change in any employment condition, § 10.

28.     The Act also allows employers to communicate "information that is necessary for the employees to perform their required job duties" to employees. § 35(3).

29.     The Act exempts certain employers that communicate about political matters: "political organization[s,] political party organization[s,] caucus organization[s,] candidate's political organization[s, or] not-for-profit organization[s] that [are] exempt from taxation under Section 501(c)(4), 501(c)(5), or 501(c)(6) of the Internal Revenue Code." § 35(6).

30.     The Act does not, however, exempt 501(c)(3) organizations.

31.     The Act also exempts the General Assembly and State or local legislative or regulatory bodies with respect to communications of the employer's proposals to change legislation, regulations, or public policy. § 35(7).

32.     The Act also exempts religious organizations from the provisions of the Act with respect to communications of the employer's religious beliefs, practices, or tenets. § 35(7). The Act does not define "religious organization."

### Injury to Plaintiff Illinois Policy Institute

33.     The Institute is a 501(c)(3) organization and therefore not exempt.

34.     The Act bans the Institute from communicating with its employees during mandatory meetings about "proposals to change legislation, proposals to change

regulations, [and] proposals to change public policy"—even though creating such proposals is one of the Institute's principal purposes.

35. The Institute is a research organization that publishes policy research on a variety of political topics, including the state budget, jobs, labor, pensions, education, and criminal justice.

36. The Institute holds mandatory staff meetings every week for all staff, with no exceptions made for job title or position.

37. The Institute also has regularly scheduled team meetings and holds strategy meetings scheduled as needed that are mandatory for certain staff.

38. The Institute holds two all-staff retreats each year, and all staff, regardless of position, are required to attend.

39. At the mandatory meetings and mandatory retreats, the Institute has discussed topics such as the Workers' Rights Amendment, the proposed real estate transfer tax in Chicago, and the Invest in Kids tax credit scholarships.

40. It is important for the functioning of the Institute to communicate about political matters—including discussions of any legislation that may be crafted by the General Assembly—with its employees and ensure that their employees listen to such communications. Often the most efficient way of doing so is by holding mandatory meetings.

41. The Institute believes it is important to discuss its work with all its employees, regardless of whether a specific employee is working on a specific topic. Such discussions improve staff morale and team cohesion and enable staffers not

working on a specific policy-related matter to express their ideas or new perspective on that matter.

42.     The Institute plans to continue holding mandatory meetings and retreats in which changes to public policy and legislation are discussed.

## Injury to Plaintiff Technology & Manufacturing Association

43.     TMA is a trade organization that partners with small and midsize manufacturers to assist them in maintaining and growing their businesses.

44.     Although TMA itself is exempt from the Act as a 501(c)(6) nonprofit, its constituent members are not.

45.     Some of TMA's members are owned by individuals with deep religious convictions, who seek to implement their faith in their work, and therefore sometimes hold meetings, or communicate with their employees, about their religious views—including, sometimes, in mandatory meetings or in communications that their employees are required to receive or hear as a condition of their employment.

46.     Some of TMA's members are businesses that believe that unionization of their employees would be against the interest of the business and its employees, and either have communicated this position to their employees in mandatory meetings or would do so if some employees sought to unionize.

47.     Many of TMA's members discuss political matters, as defined by the Act, with employees in mandatory meetings or in communications that their employees must listen to. They do so for a variety of reasons, including because such political

matters may affect or be relevant to their business or to the employees directly or indirectly.

## Count I

### The ban on employer speech to employees about "political matters" in P.A. 103-0722 violates the First Amendment's guarantee of freedom of speech.

48.    The allegations contained in all preceding paragraphs are incorporated herein by reference.

49.    "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter or its content." *Police Department of Chicago v. Mosley,* 408 U.S. 92, 95-96 (1972).

50.    A law is content based if the law "'on its face' draws distinctions based on the message a speaker conveys." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (*quoting Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563–64 (2011)).

51.    "Content-based regulations are presumptively invalid" and thus subject to strict scrutiny analysis. *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382 (1992); *United States v. Alvarez,* 567 U.S. 709, 717 (2012) (plurality opinion). Content-based restrictions on political and religious speech warrant such scrutiny because they "are especially likely to be improper attempts to value some forms of speech over others, [and] are particularly susceptible to being used by the government to distort public debate." *City of Ladue v. Gilleo*, 512 U.S. 43, 60 (1994) (O'Connor, J., concurring).

52.    The Act is a content-based regulation because it regulates speech based on its content: an employer is prohibited from communicating political speech or

religious speech to its employees at mandatory meetings or by requiring the employees to listen to such speech.

53. To know whether an employer violates the Act, the government must discern the content of the employer's speech.

54. Defendant has no compelling governmental interest in prohibiting employers from communicating political or religious matters to employees.

55. The Act is not narrowly tailored to serve any purported compelling government interest.

56. And the Act is not the least restrictive means of achieving any purported compelling government interest.

57. The Act therefore violates the Plaintiffs' First Amendment rights, and they are entitled to injunctive relief because they are irreparably harmed and have no adequate remedy at law.

## Count II

### The National Labor Relations Act Preempts the Act's ban on employer speech to employees about labor organizations.

58. The allegations contained in all preceding paragraphs are incorporated herein by reference.

59. The National Labor Relations Act ("NLRA") "is a comprehensive code passed by Congress to regulate labor relations in activities that affect interstate and foreign commerce." *Cannon v. Edgar*, 33 F.3d 880, 883 (7th Cir. 1994). It "reflects congressional intent to create a uniform, national body of labor law interpreted and administered by a centralized agency, the National Labor Relations Board." *Id.*

60.    "The NLRA enumerates unfair labor practices by both employees and employers, 29 U.S.C. § 158(a) and (b)," which include employer interference with the right to self-organization and collective bargaining, refusal by an employer to bargain collectively with a union, and bargaining in good faith. *Cannon*, 33 F.3d at 883.

61.    The Supreme Court has developed two doctrines under which the NLRA can preempt state or local laws. One, "*Garmon* preemption, forbids state and local regulation of activities that the NLRA protects or prohibits or arguably protects or prohibits." *Id.* The other, *"Machinists* preemption, prohibits state and municipal regulations of areas that Congress left to the free play of market forces." *Id.*

62.    The NLRA protects—or at least arguably protects—employers' right to speak to their employees about unionization at mandatory meetings. *See Babcock & Wilcox Co.*, 77 N.L.R.B. 577 (1948); 29 U.S.C. § 158(c) ("The expressing of any vides, argument, or opinion, or the dissemination thereof . . . shall not constitute or be evidence of an unfair labor practice . . . .").

63.    Therefore, the NLRA preempts any state law that would restrict employers' right to speak to their employees about unions—including the Act Plaintiffs challenge here.

64.    A state or local law that is preempted by the NLRA violates the Supremacy Clause of the United States Constitution. *See Cannon*, 33 F.3d at 883.

11

65.     Therefore, to the extent that the Act prohibits employers from speaking to their employees about unions, the Act is preempted by the NLRA and violates the Supremacy Clause.

## Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A.      Enter a judgment declaring that P.A. 103-0722's prohibition on employer speech to employees about "political matters" at mandatory meetings violates the First Amendment to the United States Constitution, both on its face and as applied to Plaintiff Illinois Policy Institute and Plaintiff TMA's members.

B.      Enter a judgment declaring that P.A. 103-0722's prohibition on employer speech to employees about "religious matters" at mandatory meetings violates the First Amendment on its face and as applied to Plaintiff TMA's members.

C.      Enter a judgment declaring that, to the extent that P.A. 103-0722 restricts employer speech related to labor unions, it is preempted by the National Labor Relations Act and therefore violates the Supremacy Clause of the United States Constitution.

D.      Preliminarily and permanently enjoin Defendant from enforcing P.A. 103-0722;

E.    Award Plaintiffs their reasonable costs, expenses, and attorneys' fees

pursuant to any applicable law; and

F.    Award Plaintiffs any additional relief the Court deems just and proper.

Dated: October 30, 2024

Respectfully submitted,

**Illinois Policy Institute *and*
Technology & Manufacturing
Association**

By: /s/ James McQuaid
One of their Attorneys

Jacob Huebert
Jeffrey M. Schwab
James McQuaid
Liberty Justice Center
7500 Rialto Blvd
Suite 1-250
Austin, TX 78735
512-481-4400
jhuebert@ljc.org
jschwab@ljc.org
jmcquaid@ljc.org