**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Illinois Policy Institute and the Technology & Manufacturing Association, | |
| Plaintiffs, | Case No. 1:24-cv-06976 |
| v. | Hon. Franklin U. Valderrama |
| Jane R. Flanagan, in her official capacity as Director of the Illinois Department of Labor, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
<u>PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>**

December 24, 2024

Alex Hemmer
R. Henry Weaver
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603

**Table of Contents**

Introduction .................................................................................................................... 1

Background ..................................................................................................................... 1

Legal Standard ............................................................................................................... 2

Argument ........................................................................................................................ 3

    I.   The Court should resolve the Director's challenge to subject-matter jurisdiction before considering whether to enter preliminary injunctive relief ..................................... 3

    II.  Plaintiffs have no likelihood of success on their First Amendment claim. ....................... 4

        A.  The Act is an antiretaliation statute that protects vulnerable employees ..................... 4

        B.  Plaintiffs' facial challenge to the Act under the First Amendment fails ..................... 7

    III. Plaintiffs have not demonstrated any likelihood of irreparable harm ............................ 11

    IV. The balance of hardships and the public interest weigh against a preliminary injunction. .................................................................................................................... 15

    V.  Any relief entered should not extend beyond specific persons with cognizable injuries ......................................................................................................................... 17

Conclusion .................................................................................................................... 20

**Table of Authorities**

**Cases**

*520 S. Michigan Ave. Assocs., Ltd. v. Unite Here Loc. 1*, 760 F.3d 708 (7th Cir. 2014) ...................................................................................................................9

*ACLU of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012)...................................................15

*Aguilar v. Avis Rent A Car Sys., Inc.*, 980 P.2d 846 (Cal. 1999)...............................9, 17

*Americans for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021) ...................................7

*Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979) ...............................3

*Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015)..........................................15

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ...................................5

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ...............................................................17

*Cassell v. Snyders*, 990 F.3d 539 (7th Cir. 2021) ..............................................11–12, 14

*Christian Legal Soc'y v. Walker*, 453 F.3d 853 (7th Cir. 2006)...................................15

*City of Chicago v. Barr*, 961 F.3d 882 (7th Cir. 2020).............................................19–20

*Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464 (7th Cir. 2012) .......................9

*Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149 (2018)................................................5

*DM Trans, LLC v. Scott*, 38 F.4th 608 (7th Cir. 2022)................................................12

*Doe v. Rokita*, 54 F.4th 518 (7th Cir. 2022) ...............................................................19

*Doe v. Univ. of S. Ind.*, 43 F.4th 784 (7th Cir. 2022)...................................................15

*E.E.O.C. v. Preferred Mgmt. Corp.*, 216 F. Supp. 2d 763 (S.D. Ind. 2002)...................9

*Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375 (7th Cir. 2018)................................18

*Elrod v. Burns*, 427 U.S. 347 (1976) ....................................................................14–16

*Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975) ...........................................8, 10

*Ex parte Young*, 209 U.S. 123 (1908)....................................................................3, 13

*Feehan v. Wisconsin Elections Commission*, 506 F. Supp. 3d 596 (E.D. Wis. 2020)................3–4

*Frisby v. Schultz*, 487 U.S. 474 (1988)........................................................................8

*Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949)........................................10

*Henderson v. United States*, 517 U.S. 654 (1996) ......................................................14

*Hill v. Colorado*, 530 U.S. 703 (2000) ........................................................................8

*Honeyfund.com Inc. v. Governor*, 94 F.4th 1272 (11th Cir. 2024)...............................11

*Ill. Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020) .................................2, 4

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878 (2018)................................................................................................16

*John Doe No. 1 v. Reed*, 561 U.S. 186 (2010) ............................................................................2, 7

*J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646 (7th Cir. 2014) ...............................18

*Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011).......................................5

*Korte v. Sebelius*, 735 F.3d 654 (7th Cir. 2013) .........................................................................15

*Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921 (2024) ...................................................................19

*Lehman v. City of Shaker Heights*, 418 U.S. 298 (1974).............................................................8–9

*Lewis v. Casey*, 518 U.S. 343 (1996)......................................................................................17–18

*Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531 (7th Cir. 2021) .................................................15

*Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994) .......................................................17

*Marsh v. Alabama*, 326 U.S. 501 (1946) ................................................................................16–17

*Mays v. Dart*, 974 F.3d 810 (7th Cir. 2020) ...........................................................................14–15

*Mazurek v. Armstrong*, 520 U.S. 968 (1997).............................................................................2, 12

*McHale v. McDonough*, 41 F.4th 866 (7th Cir. 2022)....................................................................6

*McKenzie v. City of Chicago*, 118 F.3d 552 (7th Cir. 1997) ........................................................19

*Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765 (7th Cir. 2011)...................................11

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024)......................................................................4, 7, 9

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) ...................................................12–13

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) ........................................................................5

*Munaf v. Geren*, 553 U.S. 674 (2008)...........................................................................................4

*Nat'l People's Action v. Vill. of Wilmette*, 914 F.2d 1008 (7th Cir. 1990)...................................15

*N.L.R.B. v. Gissel Packing Co.*, 395 U.S. 575 (1969) ............................................................8–9, 16

*Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978)...............................................................8–9

*Omega Satellite Prod. Co. v. City of Indianapolis*, 694 F.2d 119 (7th Cir. 1982) .......................14

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ...................................................................................13

*Patriot Homes, Inc. v. Forest River Hous., Inc.*, 512 F.3d 412 (7th Cir. 2008) ...........................18

*PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995)............................................................18

*Powell v. Starwalt*, 866 F.2d 964 (7th Cir. 1989)........................................................................14

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002 (7th Cir. 2021) ......................................................................................................................................18

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952)................................................12

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ..........................................................................10

*Regan v. Taxation With Representation of Washington*, 461 U.S. 540 (1983) ............................11

*Reno v. Flores*, 507 U.S. 292 (1993) ............................................................................................7

*Robinson v. Jacksonville Shipyards, Inc.*, 760 F. Supp. 1486 (M.D. Fla. 1991) ............................9

*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995)...............................10–11

*Rowan v. U.S. Post Off. Dep't*, 397 U.S. 728 (1970).........................................................................8–9

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47 (2006) ................................8

*Ryan LLC v. Fed. Trade Comm'n*, 2024 WL 3297524 (N.D. Tex. July 3, 2024) ...................18–19

*Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200 (3d Cir. 2001) ....................................................9

*Schneiderman v. United States*, 320 U.S. 118 (1943).....................................................................16

*Simic v. City of Chicago*, 851 F.3d 734 (7th Cir. 2017) ..................................................................3

*Snyder v. Phelps*, 562 U.S. 443 (2011).............................................................................................10

*Speech First v. Killeen*, 968 F.3d 628 (7th Cir. 2020) ....................................................................3

*Thomas v. Collins*, 323 U.S. 516 (1945).........................................................................................8–9

*Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891 (7th Cir. 2001)............................................................14

*Warth v. Seldin*, 422 U.S. 490 (1975)..............................................................................................18

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008)............................9–10

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021)...............................................................10

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)..........................................................2, 11

*W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943).........................................................16

**Statutes**

26 U.S.C. § 501.............................................................................................................7, 10–11

740 ILCS 174/1.....................................................................................................................5

820 ILCS 57/1........................................................................................................................1

820 ILCS 57/15...........................................................................................................1, 4–6, 8–9

820 ILCS 57/20...................................................................................................................1, 12

820 ILCS 57/25................................................................................................................1–2, 12

820 ILCS 57/35...................................................................................................................1, 6–8

Ala. Code § 36-26A-3..........................................................................................................5

Conn. Gen. Stat. § 31-51m ..................................................................................................5

Conn. Pub. Act 82-289.........................................................................................................5

Fla. Stat. § 448.101 ..............................................................................................................5

La. Stat. Ann. § 23:964 ......................................................................................................5–6

Mass. Gen. Laws ch. 149, § 185 ........................................................................................5–6

Minn. Stat. § 181.932...........................................................................................................5–6

N.J. Stat. Ann. § 34:19-2 ..................................................................................................5–6

N.D. Cent. Code § 34-01-20 ............................................................................................5–6

W. Va. Code § 6C-1-3 ......................................................................................................5–6

**Rules**

Fed. R. Civ. P. 4 ...........................................................................................................13–14

Fed. R. Civ. P. 6 ...........................................................................................................13–14

Fed. R. Civ. P. 12 ................................................................................................................4

Fed. R. Civ. P. 65 ..........................................................................................................4, 18

**Other Authorities**

4B Fed. Prac. & Proc. Civ. § 1137 .....................................................................................13

Elizabeth Anderson, *Private Government* (2017) ..............................................................17

Kate E. Andrias, *A Robust Public Debate: Realizing Free Speech in Workplace Representation Elections*, 112 Yale L.J. 2415 (2003) ................................................16

J. M. Balkin, *Some Realism About Pluralism: Legal Realist Approaches to the First Amendment*, 1990 Duke L.J. 375 ...........................................................................17

Richard H. Fallon, Jr., *Sexual Harassment, Content Neutrality, and the First Amendment Dog That Didn't Bark*, 1994 Sup. Ct. Rev. 1 .......................................17

**Introduction**

The Court should deny Plaintiffs' request for a preliminary injunction related to the Worker Freedom of Speech Act ("Act"), 820 ILCS 57/1 *et seq.* To start, the Court lacks jurisdiction over Plaintiffs' claims for multiple reasons. The Director does not enforce the Act, so no challenger of the Act could overcome sovereign immunity or prove Article III standing in a pre-enforcement suit against the Director. These Plaintiffs also fail to plead or to prove any cognizable injury for reasons specific to them. Plaintiffs further have no likelihood of success on the merits because employers have no First Amendment rights to discipline their employees for refusing to listen to political and religious speech. Plaintiffs will suffer no likely irreparable harm absent an injunction because the chance of any enforcement activity against them is purely speculative. Finally, the Act serves the public interest by protecting Illinoisans' freedom at work—the place where, by necessity, they spend so much of their daily lives.

**Background**

The Act prohibits the conduct of discharging, disciplining, or penalizing an employee for refusing to attend meetings or to listen to speech about religious and political matters. 820 ILCS 57/15. The Act does not restrict voluntary meetings or communications. *Id.* 57/35(2). The Act contains five exceptions to ensure that an employer can still hold mandatory meetings about religious and political matters that relate to the employer's mission or the employee's job duties. *Id.* 57/35(3), (5)–(8).

The Director has no authority or intention to initiate proceedings to enforce the Act, as supported by sworn declaration. *See* ECF 20 at 3–5; ECF 20-1. The Act has two enforcement mechanisms: a private right of action for an "aggrieved employee," 820 ILCS 57/20, and a provision whereby an "interested party" may recover civil penalties on behalf of the State, *id.* 57/25. Only the latter provision envisions any role at all for the Director. Under that provision, the

Director cannot "inquire" into violations of the Act unless they are "brought to [her] attention by an interested party." *Id.* 57/25(a). No subpoena power backs up the informal inquiry. As to litigation, the Director may only "institute *the actions* … provided in this Section." *Id.* 57/25(a) (emphasis added). Only private parties, not the Director, can file the actions. *Id.* 57/25(b)–(d). The Director oversees a 180-day waiting period before a private party can sue, but the Director cannot stop such a suit from being filed after 180 days have passed. *Id.* 57/25(b)–(c).

Plaintiffs Illinois Policy Institute ("IPI") and the Technology & Manufacturing Association ("TMA") are organizations with political missions. ECF 8 ¶¶ 35, 43; ECF 20-2, 20-8. They bring a facial challenge to the Act as they seek to enjoin enforcement of the Act in all circumstances. ECF 8 at 12 ¶ D; *see John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). IPI alone filed its initial complaint on August 8, 2024. ECF 1. IPI then did nothing for almost three months while it worked on recruiting another plaintiff. ECF 6. On October 30, 2024, IPI filed an amended complaint joining TMA, ECF 8, and for the first time moved for a preliminary injunction, ECF 9. The motion, like the complaint, seeks a universal injunction that would prohibit the Director "from implementing and enforcing" the Act in all circumstances as to all persons. ECF 9 at 1.

### Legal Standard

Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original, quotations omitted). Accordingly, "an applicant for preliminary relief bears a significant burden": it must make a "strong showing" that it is likely to succeed on the merits and "that 'irreparable injury is likely in the absence of an injunction'"; the balance of equities must "tip[] in [the applicant's] favor"; and "the 'injunction [must be] in the public interest.'" *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. 2020) (alterations in original) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008)).

**Argument**

**I.     The Court should resolve the Director's challenge to subject-matter jurisdiction before considering whether to enter preliminary injunctive relief.**

The Court should assure itself of its own jurisdiction before even considering Plaintiffs' request for extraordinary relief. In her accompanying motion to dismiss, ECF 20 at 7–16, the Director explains that Plaintiffs fail to establish the *Ex parte Young*, 209 U.S. 123 (1908), exception to sovereign immunity or their Article III standing because the Director has no authority to initiate enforcement of the Act. Even if Plaintiffs could overcome those issues, TMA has neither alleged nor proven associational standing, ECF 20 at 16–18, and IPI has neither alleged nor proven any "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the Act]," *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979); *see* ECF 20 at 17–19.

The proper course is to resolve these jurisdictional issues before proceeding any further in this case. Plaintiffs' "burden to demonstrate standing in the context of a preliminary injunction motion is at least as great as the burden of resisting a summary judgment motion," which means they "must set forth by affidavit or other evidence specific facts, rather than general factual allegations of injury." *Speech First v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020) (cleaned up). True, a district court "can address a motion for a preliminary injunction without making a conclusive decision about whether it has subject matter jurisdiction." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). But "issues of subject matter jurisdiction are always on the table in federal courts," *id.*, and if a plaintiff lacks standing, its motion for a preliminary injunction should be denied on that basis, *id.* at 739.

A similar situation presented in *Feehan v. Wisconsin Elections Commission*, 506 F. Supp. 3d 596 (E.D. Wis. 2020). "From the outset, the plaintiff ha[d] sought to have the claims

3

in the complaint resolved through a motion for injunctive relief under Fed. R. Civ. P. 65." *Id.* at 604. The defendant state official "ha[d] raised defenses under Rule 12(b)(1) and (b)(6)." *Id.* at 605. The court addressed the Rule 12 issues first: "If this court does not have jurisdiction to hear and decide [plaintiff's] claims, any decision it might make regarding the merits of the claims would be invalid. For that reason, the court considers the motions to dismiss before considering the plaintiff's request for injunctive relief." *Id.* This Court should likewise address its own jurisdiction first. If there is no jurisdiction, Plaintiffs' motion is beside the point.

## II. Plaintiffs have no likelihood of success on their First Amendment claim.

Plaintiffs have not made a "strong showing," *Ill. Republican Party*, 973 F.3d at 762, that they are likely to succeed on the merits of their First Amendment claim. Once again, Plaintiffs cannot make a strong showing because the Court lacks jurisdiction. *See* ECF 20 at 7–19. "A difficult question as to jurisdiction" makes success on the merits "more *unlikely* due to potential impediments to even reaching the merits." *Munaf v. Geren*, 553 U.S. 674, 690 (2008). Even setting aside the jurisdictional infirmities, however, Plaintiffs' pre-enforcement facial challenge under the First Amendment fails as a matter of law. (Plaintiffs also allege that the Act is preempted by the National Labor Relations Act, ECF 8 ¶¶ 58–65, but they do not seek preliminary injunctive relief on that basis.) The Act has a "plainly legitimate sweep" of constitutional applications for at least two independent reasons. *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). First, it overwhelmingly regulates only the unprotected conduct of employer retaliation. Second, it permissibly protects the captive audience of employees who must either listen to their employer or be disciplined.

### A. The Act is an antiretaliation statute that protects vulnerable employees.

The Act prohibits the conduct of employer retaliation. When it goes into effect on January 1, 2025, the Act will provide that an employer "may not discharge, discipline, or otherwise

penalize, threaten to discharge, discipline, or otherwise penalize, or take any adverse employment action against an employee" who engages in certain protected activities. 820 ILCS 57/15. The Act thus belongs to the class of laws that the Supreme Court calls "antiretaliation provision[s]," which "seek[] to prevent harm to individuals based on what they do, *i.e.*, their conduct." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006). Congress has enacted many antiretaliation statutes; they are an ordinary feature of American employment law. *E.g.*, *Muldrow v. City of St. Louis*, 601 U.S. 346, 348 (2024) ("Title VII's anti-retaliation provision"); *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 154 (2018) ("the Dodd-Frank anti-retaliation provision"); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 7 (2011) ("the Fair Labor Standards Act … anti-retaliation provision").

This Act's operative language was borrowed not from a federal antiretaliation law but rather from a class of state antiretaliation statutes known as "whistleblower laws." Whistleblower laws have been widely enacted to protect employees from discipline because they report unlawful conduct by their employer to the authorities. *E.g.*, 740 ILCS 174/1 *et seq.* (Illinois Whistleblower Act). The key phrase in this Act, "discharge, discipline, or otherwise penalize," originated in the whistleblower statute enacted by Connecticut in 1982. *See* Conn. Pub. Act 82-289 sec. 1(b) (Exhibit 1) (codified as amended at Conn. Gen. Stat. § 31-51m(b)) (employer may not "discharge, discipline or otherwise penalize any employee" for reporting "a violation or suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body"). Numerous state laws use language like this Act's core prohibition, including the first term "discharge," the inclusion of "threat[s]," and the catch-all "adverse employment action."[1]

---

[1] *See, e.g.*, Ala. Code § 36-26A-3 ("discharge, demote, transfer, or otherwise discriminate"); Alaska Stat. § 39.90.100 ("discharge, threaten, or otherwise discriminate"); Fla. Stat. § 448.101 ("discharge, suspension, or demotion by an employer of an employee or any other adverse employment action"); La. Stat. Ann.

In addition to an adverse employment action, an antiretaliation plaintiff must also show that she engaged in "protected activity." *E.g.*, *McHale v. McDonough*, 41 F.4th 866, 871 (7th Cir. 2022) (employee "must show she engaged in statutorily protected activity"). The Act defines three types of protected activity. 820 ILCS 57/15(1)–(3). The primary type is to "decline[] to attend or participate in an employer-sponsored meeting or decline[] to receive or listen to communications from the employer … if the meeting or communication is to communicate the opinion of the employer about religious matters or political matters." *Id.* 57/15(1). The others derive from the first: An employer may not retaliate "as a means of inducing an employee" to attend such meetings or listen to such communications, and an employer may not retaliate against an employee who reports "a violation or a suspected violation" of the Act. *Id.* 57/15(2)–(3).

Eight exceptions focus the Act's prohibition on coercive meetings and communications unrelated to any legitimate employer need. First, an exception reiterates that the Act does nothing to limit "voluntary" attendance at meetings or receipt of communications. *Id.* 57/35(2). Second, the Act does not prohibit mandatory meetings and communications when necessary to comply with other laws. *See id.* 57/35(1) (communications "required by law"); *id.* 57/35(4) (communications to "prevent workplace harassment or discrimination"). Third, the Act contains five exceptions to ensure that employers can still hold mandatory meetings about religious and political matters to fulfill the employer's mission. One exception allows "communicating … any information that is necessary for the employees to perform their required job duties." *Id.* 57/35(3). This broad exception arguably covers all job-related mandatory meetings, but further exceptions

---

§ 23:964 ("discharge or in any other manner discriminate"); Mass. Gen. Laws ch. 149, § 185 ("discharge, suspension or demotion of an employee, or other adverse employment action"); Minn. Stat. § 181.932 ("discharge, discipline, penalize, interfere with, threaten, restrain, coerce, or otherwise retaliate or discriminate"); N.J. Stat. Ann. § 34:19-2 ("discharge, suspension or demotion of an employee, or other adverse employment action"); N.D. Cent. Code § 34-01-20 ("discharge, discipline, threaten discrimination, or penalize"); W. Va. Code § 6C-1-3 ("discharge, threaten, or otherwise discriminate or retaliate").

6

create safe harbors for employers with inescapably political or religious missions: "an institution of higher education," an electoral organization, "a not-for-profit organization that is exempt from taxation under [26 U.S.C. §§] 501(c)(4), 501(c)(5), or 501(c)(6)," a "legislative or regulatory body," or "a religious organization." 820 ILCS 57/35(5)–(8). These safe harbors are, in each case, limited to communications that bear on the political or religious mission of the employer in question. *Id.* Through these exceptions, the Act limits its scope to extraneous burdens on employees' freedom.

**B.      Plaintiffs' facial challenge to the Act under the First Amendment fails.**

Plaintiffs bring a pre-enforcement facial challenge to the Act, which does not go into effect until January 1, 2025. It is clear that Plaintiffs bring a facial challenge, first, because they say so. *See* ECF 8 at 12 ¶¶ A–B (alleging that the Act violates the First Amendment "on its face"). Moreover, this suit bears the hallmarks of a "facial challenge" because Plaintiffs "do not challenge [the Act's] application in a particular instance." *Reno v. Flores*, 507 U.S. 292, 300 (1993). Indeed, the Act "had not yet been applied in a particular instance—because it was not yet in existence— when [Plaintiffs'] suit was brought." *Id.* Plaintiffs seek to enjoin wholesale the Director's enforcement of the Act in all circumstances. ECF 8 at 12 ¶ D. That is the essence of a facial challenge. *See Doe v. Reed*, 561 U.S. at 194 (facial challenge where "plaintiffs' claim and the relief that would follow … reach beyond the particular circumstances of these plaintiffs").

Plaintiffs' choice to bring a facial challenge "comes at a cost." *Moody*, 603 U.S. at 723. For facial challenges under the First Amendment, "[t]he question is whether 'a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id.* (quoting *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)). A law may "be struck down in its entirety … only if the law's unconstitutional applications substantially outweigh its constitutional ones." *Id.* at 723–24.

7

The Act has a plainly legitimate sweep of clearly constitutional applications for at least two reasons. First, the Act "regulates conduct, not speech" because it regulates what employers "must *do* … not what they may or may not *say*." *Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 60 (2006). Employers can say whatever they want, as emphasized by an exception for voluntary meetings and communications. 820 ILCS 57/35(2). They cannot, however, "discharge, discipline, or otherwise penalize" employees for declining to listen. *Id.* 57/15. The Supreme Court has repeatedly held that employer retaliation and threats are unprotected conduct, not speech. *Thomas v. Collins*, 323 U.S. 516 (1945), held that "employers' attempts to persuade to action with respect to joining or not joining unions are within the First Amendment's guaranty," but that "[w]hen to this persuasion other things are added which bring about coercion, or give it that character, the limit of the right has been passed." *Id.* at 537–38. *N.L.R.B. v. Gissel Packing Co.*, 395 U.S. 575 (1969), contrasted constitutionally protected "speech alone" with "conduct easily avoided, such as discharge, surveillance, and coercive interrogation." *Id.* at 616–17. A "threat of retaliation" is "without the protection of the First Amendment." *Id.* at 618. "[T]hreats of retaliation for the labor activities of employees" may thus be "regulated without offending the First Amendment." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978).

A second and independent reason to reject this facial challenge is that the First Amendment allows the government to enact targeted protections for "an unwilling recipient" of communications. *Rowan v. U.S. Post Off. Dep't*, 397 U.S. 728, 738 (1970). The government may "shield the public from some kinds of speech" when "the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209 (1975); *see also Hill v. Colorado*, 530 U.S. 703, 716 (2000) (buffer zone around health care facilities); *Frisby v. Schultz*, 487 U.S. 474, 486 (1988) (picketing at a home); *Lehman v. City*

8

*of Shaker Heights*, 418 U.S. 298, 302 (1974) (public bus); *Rowan*, 397 U.S. at 738 (mail to the home). The Act protects the captive audience of employees who must listen or be disciplined. The Seventh Circuit has observed that "[t]he freedom of an unwilling listener to avert one's eyes or ears is considerably lessened when she is required to be on the job," making employees on the clock "an essentially captive audience." *520 S. Michigan Ave. Assocs., Ltd. v. Unite Here Loc. 1*, 760 F.3d 708, 724 (7th Cir. 2014). Courts have rejected First Amendment challenges to workplace harassment laws, which are clearly content-based restrictions on speech, in part because employees are captive audiences. *See E.E.O.C. v. Preferred Mgmt. Corp.*, 216 F. Supp. 2d 763, 809 (S.D. Ind. 2002); *Aguilar v. Avis Rent A Car Sys., Inc.*, 980 P.2d 846, 872 (Cal. 1999) (Werdegar, J., concurring); *Robinson v. Jacksonville Shipyards, Inc.*, 760 F. Supp. 1486, 1535 (M.D. Fla. 1991). Then-Judge Alito favorably cited the *Aguilar* concurring opinion, noting that "speech may be more readily subject to restrictions when a school or workplace audience is 'captive' and cannot avoid the objectionable speech." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 210 (3d Cir. 2001) (Alito, J.) (citing *Aguilar*, 980 P.2d at 871–73).

Because Plaintiffs bring a facial challenge, it would not change the result if the Act's definition of retaliatory conduct, 820 ILCS 57/15(1)–(3), swept in some marginal examples not deemed coercive under *Thomas*, *Gissel Packing*, and *Ohralik*. Nor would it matter if Plaintiffs could invent hypothetical edge cases where an employer's threats are not severe enough to create a captive audience. It is enough, in this posture, that the Act has a "plainly legitimate sweep" of unprotected coercive conduct and vulnerable captive employees. *Moody*, 603 U.S. at 723. "In determining whether a law is unconstitutional on its face, … '[courts] must be careful not to go beyond the statute's facial requirements and speculate about "hypothetical" or "imaginary" cases.'" *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 476 (7th Cir. 2012) (quoting *Wash.*

9

*State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)). If an action is ever brought against IPI or one of TMA's members under the Act, that future court would not need to hypothecate a factual scenario in order to apply the First Amendment. IPI or the TMA member could simply present a First Amendment defense. "To this day, many federal constitutional rights are as a practical matter asserted typically as defenses to state-law claims, not in federal pre-enforcement cases like this one." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 49–50 (2021). On this point, *Whole Woman's Health* cited *Snyder v. Phelps*, 562 U.S. 443 (2011), in which the "First Amendment [was] used as a defense to a state tort suit." 595 U.S. at 50.

Plaintiffs' sole argument that the Act is content based and fails strict scrutiny is therefore irrelevant. *See* ECF 9-1 at 7–13. Where a statute regulates conduct rather than speech, it does not matter if the prohibition has incidental content effects. "[S]ince words can in some circumstances violate laws directed not against speech but against conduct … a particular content-based subcategory of a proscribable class of speech can be swept up incidentally within the reach of a statute directed at conduct rather than speech." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 389 (1992); *see also Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949) (conduct may be prohibited though "carried out by means of language"). Likewise, when the government protects a captive audience, it may impose "selective restrictions," *Erznoznik*, 422 U.S. at 209; and it may "protect unwilling listeners from protected speech," *Snyder*, 562 U.S. at 459. Plaintiffs devote almost all their energy to a line of argument that is beside the point.

Finally, Plaintiffs are wrong that the Act's exception for organizations claiming income-tax exemptions under § 501(c)(4) to (6) of the Internal Revenue Code, but not for those claiming exemption under § 501(c)(3), implies illicit viewpoint discrimination. *See* ECF 9-1 at 9, 11. To be sure, "when the government targets not subject matter, but particular views taken by speakers on

10

a subject, the violation of the First Amendment is all the more blatant." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). That principle animated the Eleventh Circuit's decision in *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272 (11th Cir. 2024), which affirmed an injunction against enforcement of a law that the State of Florida "acknowledge[d]" to "enforce[] viewpoint-based restrictions." *Id.* at 1278. Fortunately, this Act does not do that. The Supreme Court has considered and rejected this argument from another § 501(c)(3) plaintiff: "The sections of the Internal Revenue Code here at issue do not employ any suspect classification." *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 548 (1983). Differential treatment of different types of § 501(c) organizations does not offend the First Amendment.

### III.   Plaintiffs have not demonstrated any likelihood of irreparable harm.

Plaintiffs fail to "establish that irreparable harm is likely without an injunction." *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 787 (7th Cir. 2011). One issue under this factor is the *nature* of the alleged harm, such as whether that harm would be "difficult—if not impossible—to reverse." *Id*. In their two-paragraph treatment of irreparable harm, Plaintiffs address only that issue, arguing that First Amendment harms are by their nature irreversible. *See* ECF 9-1 at 13–14. But Plaintiffs ignore that "[f]or preliminary relief to be granted, the irreparable harm *must also be likely*." *U.S. Army Corps*, 667 F.3d at 788 (emphasis added). The Supreme Court has rejected "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm." *Winter*, 555 U.S. at 22. Plaintiffs are wrong that a likelihood of harm can be "presumed" in the First Amendment context. ECF 9-1 at 7. The Seventh Circuit recently affirmed the denial of a preliminary injunction where "[t]he risk of irreparable injury to these plaintiffs is very low and dropping, even if we assume plaintiffs are likely to succeed on their First Amendment claim." *Cassell v. Snyders*, 990 F.3d 539, 550 (7th Cir. 2021).

Because Plaintiffs believe that they are automatically entitled to a preliminary injunction

11

if they win on the merits, ECF 9-1 at 7, Plaintiffs have not attempted to make any showing that their alleged harms are likely to come to pass, *id.* at 13–14. They had the burden to make that showing. *Mazurek*, 520 U.S. at 972. The Court could simply deny their motion based on this forfeiture. *See DM Trans, LLC v. Scott*, 38 F.4th 608, 619 (7th Cir. 2022) (argument by the movant in support of irreparable harm is waived if not "sufficiently developed").

Even setting aside their forfeiture, Plaintiffs cannot show a likelihood of irreparable harm absent a preliminary injunction. "In suits such as this one, which the plaintiff intends as a 'first strike' to prevent a State from initiating a suit of its own, the prospect of state suit must be imminent, for it is the prospect of that suit which supplies the necessary irreparable injury." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992). No injunction may properly issue against state officials if "there is no proof of any threatened or probable act of the [officials] which might cause the irreparable injury essential to equitable relief by injunction." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952). Plaintiffs cannot make any showing of imminent enforcement against them that would prove "likely" harm. The Director has no role in the private right of action under the Act, 820 ILCS 57/20, and no controlling role over the third-party complaint provision, *id.* 57/25. The Director has submitted a sworn statement that, in her view, her only roles in section 25 are notice requirements. *See* ECF 20-1 ¶¶ 9–11. The Director does not intend to do anything else to affirmatively enforce the Act. *Id.* ¶¶ 11–12. The Director does not intend to launch affirmative investigations of potential violations of the Act and believes that she lacks authority to do so. *Id.* ¶ 11. "[T]he prospect of state suit" against Plaintiffs is anything but "imminent." *Morales*, 504 U.S. at 382. The Director has made no "[c]redible threats" of enforcement that could "chill First Amendment activity." *Cassell*, 990 F.3d at 546.

In short, Plaintiffs cannot show a "likely" injury, under the preliminary-injunction test, for

12

the same reasons that they fail to overcome sovereign immunity and lack Article III standing. *See* ECF 20 at 7–16. Indeed, *Morales* expressly forged the connections among these related doctrines. *Morales* looked to *Ex parte Young* for guidance on "the limits on the exercise of [a federal court's] injunctive power," *Morales*, 504 U.S. at 381, not for its holding on sovereign immunity as such. "*Ex parte Young*," the Court observed, "speaks of enjoining state officers '*who threaten and are about to commence proceedings.*'" *Id.* at 382 (quoting *Ex parte Young*, 209 U.S. at 156) (emphasis in original). *Morales* further held that "conjectural injury cannot warrant equitable relief," *Morales*, 504 U.S. at 382, citing *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974). *O'Shea*, in turn, interpreted both Article III standing and the "adequate basis for equitable relief," noting that these topics "shade into" each other. *Id.* at 499. *O'Shea* found no standing and no basis for equitable relief because the plaintiffs "ha[d] not pointed to any imminent prosecutions contemplated against any of their number." *Id.* at 498. Neither have these Plaintiffs.

Plaintiffs' lack of diligence in prosecuting this suit corroborates the absence of any likely harm. Plaintiffs have not behaved like people who believe that they face a risk of imminent, irreparable harm. IPI filed its initial complaint on August 8, 2024, ECF 1, and then sat on its hands for months, not even having summons issued. The Court was obliged to remind IPI about the 90-day deadline for service. *See* ECF 7; Fed. R. Civ. P. 4(m). When Plaintiffs finally amended their complaint and moved for a preliminary injunction on October 30, 2024, ECF 9, they forgot to file their supporting declarations until the next day, ECF 10, and then did not issue summons until November 1. The 90-day deadline for service then lapsed on November 6, 2024, still with no service and no timely motion filed to extend the service deadline. *See* 4B Fed. Prac. & Proc. Civ. § 1137 ("Filing an amended complaint does not toll the Rule 4(m) service period and thereby provide an additional 90 days for service."); Fed. R. Civ. P. 6(b) (only "excusable neglect" allows

untimely motions to extend time).[2] Plaintiffs finally served the Director on November 19, nearly three weeks after they moved for a preliminary injunction. ECF 12. Plaintiffs' casual approach to litigating their suit undermines any claimed imminent, irreparable harm. *See Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) ("Delay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered.").

Plaintiffs instead place all their faith in the idea that, in the First Amendment context, "a court will simply focus on the likelihood of success on the merits, as the other factors are generally presumed." ECF 9-1 at 7. The Seventh Circuit's recent and definitive holding to the contrary in *Cassell* puts this notion to rest. *See* 990 F.3d at 550. But, for completeness, the Director explains Plaintiffs' misunderstanding on this point. The principle that First Amendment harms are, by their nature, irreversible and irreparable originated in *Elrod v. Burns*, which held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. 347, 373 (1976). Plaintiffs stop there. But there is still the requirement of a *likely* deprivation. In fact, *Elrod* held that injunctive relief was appropriate precisely because the plaintiffs' "First Amendment interests were either threatened or in fact being impaired at the time relief was sought." *Id*. Only a few years after *Elrod* was decided, the Seventh Circuit held that "the *Elrod* proposition" necessarily "presuppose[s] that some curtailment of speech will occur if the preliminary injunction is denied." *Omega Satellite Prod. Co. v. City of Indianapolis*, 694 F.2d 119, 129 (7th Cir. 1982), *abrogated on other grounds*, *Mays v. Dart*, 974 F.3d 810, 821–822 (7th Cir.

---

[2] The Director could seek dismissal of this suit without prejudice given Plaintiffs' failure timely to serve her. *See* Fed. R. Civ. P. 4(m). The Director opts not to only because a dismissal on that basis would not serve judicial economy. The 90-day deadline is not jurisdictional, *Henderson v. United States*, 517 U.S. 654, 669–70 (1996), and Plaintiffs could simply re-file, *Powell v. Starwalt*, 866 F.2d 964, 966 (7th Cir. 1989).

2020). So, as *Elrod* stated, and as the Seventh Circuit has held, *Elrod* still requires a likelihood of harm, even in the First Amendment context.

True, many decisions have cited *Elrod* and its progeny for the irreparable nature of First Amendment deprivations, and Plaintiffs note some of them. ECF 9-1 at 7, 13–14. But these decisions, in every instance, involved ongoing or imminent deprivations: a sheriff's "campaign intended to crush" the plaintiff's business, *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015); daily fines continuously accruing unless the plaintiffs secured an injunction, *Korte v. Sebelius*, 735 F.3d 654, 660 (7th Cir. 2013); a "credible threat of prosecution" shown by a dozen similar recent prosecutions, *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 592 & n.2 (7th Cir. 2012); a completed revocation of a student group's registration, *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 858 (7th Cir. 2006); and a prior restraint on speech in which the plaintiff could not solicit without a permit from the defendant, *Nat'l People's Action v. Vill. of Wilmette*, 914 F.2d 1008, 1009 (7th Cir. 1990). The Director agrees that First Amendment freedoms are invaluable. These cases, however, only confirm that Plaintiffs show no likelihood of any irreparable harm that could justify an injunction.

## IV. The balance of hardships and the public interest weigh against a preliminary injunction.

For the reasons discussed above, Plaintiffs have neither shown any likelihood of success on the merits nor that they will suffer irreparable harm. The Court therefore need not weigh the equitable factors. *See Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022); *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). If the Court does consider the balance of hardships, under the Seventh Circuit's "sliding scale" approach, Plaintiffs' failure to demonstrate a strong likelihood of success requires them to demonstrate that the equities tip heavily in their favor. *See Univ. of S. Ind.*, 43 F.4th at 791 n.4. Plaintiffs cannot meet this burden.

15

The plaintiff employers claim that an injunction would serve the public interest because it would protect their "liberties" and "freedoms." ECF 9-1 at 15. But employees have liberty interests, too. The Act protects Illinois workers' freedom of thought against arbitrary abridgements of freedom unconnected to any job requirement. The Act does not constrain constitutional liberty but expands it. The First Amendment, after all, embodies national values. It stands for "the spirit of freedom and tolerance in which our nation was founded" and "a desire to secure the blessings of liberty in thought and action to all." *Schneiderman v. United States*, 320 U.S. 118, 120 (1943). The First Amendment secures "a right of self-determination in matters that touch individual opinion and personal attitude." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 631 (1943). So "there are speech interests on both sides of the equation" in this case. Kate E. Andrias, *A Robust Public Debate: Realizing Free Speech in Workplace Representation Elections*, 112 Yale L.J. 2415, 2436 (2003). The freedom of Illinois employees, who are the great majority of Illinois citizens, weighs heavily in the balance.

The Supreme Court has recognized the inherently coercive nature of the employment relationship and the restrictions it can impose on First Amendment values. The Supreme Court has held that the "[t]he threat of dismissal" from public employment is sufficiently coercive to "inhibit[] protected belief and association." *Elrod*, 427 U.S. at 359. Public employees can be "compelled" and "coerced" by the terms of their employment, *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 893 (2018), even though they could in theory just quit. Just quitting is not a solution due to "the economic dependence of the employees on their employers," whether public or private. *Gissel Packing*, 395 U.S. at 617. In the case of an outright company town, the Supreme Court held that "[o]wnership does not always mean absolute dominion" and deemed the private company a state actor for First-Amendment purposes. *Marsh*

16

*v. Alabama*, 326 U.S. 501, 506 (1946).

Company town or no, any employment relationship can impose the restrictions on freedom of belief that the Supreme Court has deprecated. An employer essentially runs a "private government," and "[m]ost workers are hired without any negotiation over the content of the employer's authority, and without a written or oral contract specifying any limits to it." Elizabeth Anderson, *Private Government* 53 (2017). "People need to work; expecting them to walk past someone handing out leaflets on the sidewalk without accepting and reading the flyer is not the same as requiring them to walk off their job to avoid unwanted speech." *Aguilar*, 980 P.2d at 872 (Werdegar, J., concurring). That is because "employment is a practical necessity, and the economic and other costs of changing jobs would often be prohibitive." Richard H. Fallon, Jr., *Sexual Harassment, Content Neutrality, and the First Amendment Dog That Didn't Bark*, 1994 Sup. Ct. Rev. 1, 43. "Few audiences," therefore, "are more captive than the average worker." J. M. Balkin, *Some Realism About Pluralism: Legal Realist Approaches to the First Amendment*, 1990 Duke L.J. 375, 423. The Act serves the public interest by preserving employees' freedom of thought, with due deference to the legitimate needs of employers. It expands First Amendment liberty in Illinois.

## V.      Any relief entered should not extend beyond specific persons with cognizable injuries.

In the final alternative, if the Court concluded that any preliminary relief were warranted, then that relief should be limited to the specific persons whom the Court finds to have cognizable injuries. The "general rule" is "that injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Here, anyone with Article III standing would obtain "complete relief" from an order protecting only that person against enforcement of the Act. Similarly, "[t]he remedy must of course be limited

17

to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Courts must "limit the scope of injunctive relief to the case or controversy actually before them." *J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 653 (7th Cir. 2014); *see also PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1272 (7th Cir. 1995) ("[A] court abuses its discretion where the scope of injunctive relief exceeds the extent of the plaintiff's protectible rights.") (quotation and alteration omitted). No Plaintiff in this case has shown an injury in fact. *See* ECF 20 at 13–19. But, if the Court disagrees, any injury in fact is limited to, at most, IPI and specific TMA members. No one else could have established standing or entitlement to injunctive relief for the simple reason that there is no evidence about those unknown people.

Only specific TMA members, not TMA itself and not *all* TMA members, could be entitled to an injunction. "Associational standing … is derivative of—and not independent from—individual standing." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021). The purpose of associational standing is to grant relief that "will inure to the benefit of those members of the association actually injured." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). In addition, as a practical matter, any injunction would need to identify exactly which TMA members were being given relief so that the Director would know how to comply with the injunction. *See* Fed. R. Civ. P. 65(d)(1)(C) (injunction must "describe in reasonable detail … the act or acts restrained or required"). TMA has not disclosed its members, so an injunction granted to all TMA members would fail to "inform[] [the Director] of the specific conduct regulated by the injunction and subject to contempt." *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 384 (7th Cir. 2018) (quoting *Patriot Homes, Inc. v. Forest River Hous., Inc.*, 512 F.3d 412, 415 (7th Cir. 2008)). Any injunction would need to name the TMA members with standing who are protected by it. *See Ryan LLC v. Fed. Trade Comm'n*, 2024 WL 3297524, at *16 (N.D. Tex. July 3, 2024)

18

(in an associational standing case, declining to issue injunctive relief to unnamed members of the associations who had not shown standing).

Plaintiffs, in contrast, want "an order enjoining Defendant from implementing and enforcing" the Act, apparently as to the world at large. ECF 9 at 1. The propriety of the "universal" injunction that Plaintiffs seek is the subject of ongoing controversy. *See Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921 (2024) (staying a universal injunction); *id.* at 937–38 (Jackson, J., dissenting) (summarizing the debate). The Seventh Circuit, however, has held that, although courts have "the *authority* to provide injunctive relief that extends to non-parties, … [s]uch injunctions present real dangers, and will be appropriate only in rare circumstances." *City of Chicago v. Barr*, 961 F.3d 882, 916 (7th Cir. 2020) (emphasis in original); *see also Doe v. Rokita*, 54 F.4th 518, 519 (7th Cir. 2022) (vacating universal injunction in part because "relief should be no greater than necessary to protect the rights of the prevailing litigants"). Plaintiffs fail to acknowledge this principle, much less show that any of the "rare circumstances" described in *Barr*, 961 F.3d at 916, is present here.

No such showing is possible. This is not a case, for instance, in which "the equitable relief necessary to render complete relief to the plaintiff … extends incidentally to non-parties." *Id.* at 920–21; *see also McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) (exception where it is "not possible to award effective relief to the plaintiffs without altering the rights of third parties"). Nothing about the Act poses the sort of systemic issue—like a federal program for allocating funding with a single formula nationwide, *Barr*, 961 F.3d at 921—that would necessitate relief to all employers regulated by the Act. Nor is this the kind of case in which a universal injunction is required to halt an "abuse of power" that is "swift in implementation, widespread in impact, and targeted toward those with the least ability to seek redress," *id.* at 918; to the contrary, the Act is being implemented neither swiftly nor extensively, but instead will be enforced (if at

all) only by private parties after exhausting a case- and party-specific complaint process. Finally, Plaintiffs have made no showing that other employers have a limited "ability to access the courts" in order to "seek redress" themselves, *id.* at 917–18; indeed, Plaintiffs have not suggested that other Illinois employers even agree with their view of the Act. Many employers likely see no need to force their employees to listen to political and religious sermons unrelated to job duties and, as a result, no need to bring suit about this Act.

## Conclusion

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be denied in its entirety. In the alternative, it should be entered and continued while the Court determines whether it has subject-matter jurisdiction. In the final alternative, any injunctive relief granted should be limited to specific persons whom the Court finds to have cognizable injuries in fact.

Dated: December 24, 2024

Alex Hemmer
R. Henry Weaver
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
*alex.hemmer@ilag.gov*
*robert.weaver@ilag.gov*
(312) 814-3000

Respectfully submitted,

KWAME RAOUL,
Attorney General of Illinois, on behalf of
Defendant Jane R. Flanagan

By:  */s/ R. Henry Weaver*
     Assistant Attorney General

20