IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ILLINOIS POLICY INSTITUTE and THE
TECHNOLOGY & MANUFACTURING
ASSOCIATION,

                Plaintiffs,

v.

JANE R. FLANAGAN, *in her official
capacity as Director of the Illinois
Department of Labor*,

                Defendant.

Case No. 1:24-cv-06976

Hon. Judge Franklin U. Valderrama

**Plaintiffs' Combined Response in Opposition to Defendant's
Motion to Dismiss and Reply in Support of their
Motion for Preliminary Injunction**

Jeffrey M. Schwab
Jacob Huebert
James McQuaid
LIBERTY JUSTICE CENTER
7500 Rialto Blvd., Suite 1-250
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
jhuebert@ljc.org
jmcquaid@ljc.org

Dated: January 8, 2025

## Table of Contents

Introduction ............................................................................................................... 1

Argument .................................................................................................................... 1

I.    This Court has subject-matter jurisdiction over Plaintiffs'
claims .............................................................................................................. 1

    A.    The *Ex parte Young* exception to sovereign immunity
applies to Plaintiffs' claims against Defendant ................................. 2

        1.    The *Ex parte Young* exception applies to Plaintiffs'
claims because the Act is an ongoing violation of the
First Amendment and Plaintiffs seek prospective relief .............. 2

        2.    The terms of the Act expressly give Defendant
enforcement power ........................................................................ 3

        3.    Supreme Court caselaw supports the conclusion that
sovereign immunity does not bar Plaintiffs' claim ........................ 6

        4.    Other federal courts have found that the *Ex parte Young*
exception applies in legal challenges to laws almost
identical to the Act ........................................................................ 10

        5.    Long-established precedent allows pre-enforcement
First Amendment challenges to laws that chill plaintiffs'
speech ............................................................................................ 11

    B.    Plaintiffs have Article III standing because they have
pleaded the threat of concrete injury, and their requested
relief would protect them against that injury .................................... 13

    C.    Plaintiff TMA has associational standing .......................................... 15

    D.    Plaintiff IPI has standing................................................................... 16

II.    This Court should enter a preliminary injunction because
Plaintiffs have a likelihood of success on the merits of their
claims and will suffer irreparable harm without one ............................ 18

    A.    The Act is a content-based restriction on Plaintiffs' speech,
not a restriction on antiretaliatory conduct ...................................... 18

B.    Plaintiffs are likely to succeed on the merits of their First
      Amendment claim because the Act cannot survive strict
      scrutiny ................................................................................. 20

C.    Plaintiffs will suffer irreparable harm without an
      injunction ............................................................................. 23

D.    The balance of the harms and the public interest favor
      granting the preliminary injunction .................................... 24

E.    The Court should grant a broad preliminary injunction
      against the Act's enforcement ............................................ 26

Conclusion ............................................................................................ 27

# Table of Authorities

## Cases

*281 Care Comm. v. Arneson*, 638 F.3d 621 (8th. Cir. 2011) ................................... 5, 15

*303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) ........................................... 9

*ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) ........................................... 11

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) ................................................. 27

*Babbitt v. UFW Nat'l Union*, 442 U. S. 289 (1979) ................................. 7, 13

*Bauer v. Shepard*, 620 F.3d 704 (7th Cir. 2010) ........................................ 13

*Bell v. Keating*, 697 F.3d 445 (7th Cir. 2012) ......................................... 23

*Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011) ................................ 22

*Brown v. Kemp*, 86 F.4th 745 (7th Cir. 2023) ............................ 10, 14, 17, 19

*Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464 (7th Cir. 2012) ................... 11

*Chamber of Commerce of the United States of America v. Bartolomeo*,
     No. 3:22-cv-1373 (D. Conn. 2023) ................................................ 10

*Chancey v. Ill. State Bd. of Elections*, 635 F. Supp. 3d 627
     (N.D. Ill. 2022) ................................................................ 24

*Christian Legal Soc'y v. Walker*, 453 F.3d 853 (7th Cir. 2006) ...................... 25–26

*Citizens for Responsible Gov't State Political Action Comm. v.*
     *Davidson*, 236 F.3d 1174 (10th Cir. 2000) ...................................... 7–8

*Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps. v. Quinn*,
     680 F.3d 875 (7th Cir. 2012) ..................................................... 3

*DiFranco v. City of Chicago*, 589 F. Supp. 3d 909 (N.D. Ill. 2022) ................... 5–6

*Doe v. Holcomb*, 883 F.3d 971 (7th Cir. 2018) ....................................... 5, 14

*Ex parte Young*, 209 U.S. 123 (1908) .................................................. 3

*Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975) ............................... 21

*Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011) .......................... 26

*Family & Children's Ctr. v. School City*, 13 F.3d 1052 (7th Cir. 1994) ................. 14

*Frisby v. Schultz*, 487 U.S. 474 (1988) ............................................... 21

*Goldhamer v. Nagode*, 621 F.3d 581 (7th Cir. 2010) .............................. 11, 17

*Hill v. Colorado*, 530 U.S. 703 (2000) .................................................................. 21, 22

*Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1275 (11th Cir. 2024) ............. 19, 20

*Hunt v. Wash. State Apple Advert. Com'n*, 432 U.S. 333 (1977) ................................. 15

*Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018
    (7th Cir. 1979) ........................................................................................................ 24

*Int'l Ass'n of Fire Fighters, Loc. 365 v. City of E. Chicago*,
    56 F.4th 437 (7th Cir. 2022) .................................................................................. 23

*Kucharek v. Hanaway*, 902 F.2d 513 (7th Cir. 1990) .................................................. 8

*Lehman v. City of Shaker Heights*, 418 U.S. 298 (1974) ........................................... 21

*Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) ............................................. 13, 23

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ............................................................. 14

*Mays v. Dart,* 974 F.3d 810, 818 (7th Cir. 2020) ...................................................... 25

*Minnesota Chapter of Associated Builders and Contractors, Inc. v.*
    *Walz*, 24-cv-536 (D. Minn. 2024) .................................................................... 10, 11

*Mueller v. City of Joliet*, 943 F.3d 834 (7th Cir. 2019) ............................................... 5

*Mulholland v. Marion County Election Bd.*, 746 F.3d 811 (7th Cir. 2014) ............... 26

*NRA of Am. v. Vullo*, 602 U.S. 175 (2024) ................................................................ 12

*People v. Legoo*, 2020 IL 124965, 178 N.E.3d 1110 (Ill. 2020) ................................. 6

*Picard v. Magliano*, 42 F.4th 89 (2d Cir. 2022) ........................................................ 17

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
    2 F.4th 1002, 1008 (7th Cir. 2021) .................................................................. 15, 16

*Reprod. Health Servs. of Planned Parenthood of the St. Louis Region,*
    *Inc. v. Nixon*, 428 F.3d 1139 (8th Cir. 2005) ........................................................ 5

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) .......................................................... 20

*Rodgers v. Bryant*, 942 F.3d 451 (8th Cir. 2019) ....................................................... 8

*Rowan v. U.S. Post Off. Dep't*, 397 U.S. 728, 738 (1970) ......................................... 21

*Secretary of Maryland v. Joseph H. Munson Co.*,
    467 U.S. 947 (7th Cir. 1984) ................................................................................ 26

*Silha v. ACT, Inc.*, 807 F.3d 169 (2015) ..................................................................... 2

*Snyder v. Phelps*, 562 U.S. 443 (2011) ...................................................................... 25

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011)..................................................... 18–19

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).................................. 9, 13, 14

*Ty, Inc. v. Jones Grp., Inc.,* 237 F.3d 891 (7th Cir. 2001)........................................ 24

*United Food & Commercial Workers Int'l Union v. IBP, Inc.,*
    857 F.2d 422 (8th Cir. 1988) .........................................................................................8

*Verizon Maryland Inc. v. Public Service Comm'n of Maryland,*
    535 U.S. 635 (2002) ........................................................................................................3

*Vt. Right to Life Comm. v. Sorrell*, 221 F.3d 376 (2d Cir. 2000)................................ 8

*Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383 (1988)...................................... 8–9, 11

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021)....................2, 3, 6, 7, 9, 10, 12

*Wragge v. Boeing Co.*, 532 F. Supp. 3d 616 (N.D. Ill. 2021) ........................................ 5

## Statutes

775 ILCS 5/2-102............................................................................................................ 25

820 ILCS 57/25 ..................................................................................................... 4, 5, 11, 22

820 ILCS 57/35 ................................................................................................... 16, 17, 18, 22

Fed. R. Civ. P. 12 ............................................................................................................... 2

## Other Authorities

Black's Law Dictionary (12th ed. 2024) ........................................................................ 4

## Introduction

The Illinois Worker Freedom of Speech Act ("the Act") forbids employers from speaking to their employees in settings where the employee is required to be present only if the employer's speech contains "religious or political matters." Plaintiffs Illinois Policy Institute ("IPI") and the Technology & Manufacturing Association ("TMA") allege that the Act violates the First Amendment and the Supremacy Clause of the United States Constitution. *See* Am. Compl. (Doc. 8). Before this Court are Plaintiffs' motion for preliminary injunction, (Doc. 9), and Defendant's motion to dismiss Plaintiffs' complaint (Doc. 19).

As explained in Plaintiffs' memorandum in support of their motion for preliminary injunction (Doc. 9-1) and below, the motion to dismiss should be denied because Plaintiffs' claims fall within the *Ex parte Young* exception to sovereign immunity and Plaintiffs otherwise have standing, and this Court should grant Plaintiffs' motion for preliminary injunction because Plaintiffs have a strong likelihood of success on the merits of their First Amendment claim and will suffer irreparable harm without it.

## Argument

## I. This Court has subject-matter jurisdiction over Plaintiffs' claims.

This Court has jurisdiction because the *Ex parte Young* exception to sovereign immunity applies and because Plaintiffs have standing. The Court should therefore deny Defendant's motion to dismiss.

### A. The *Ex parte Young* exception to sovereign immunity applies to Plaintiffs' claims against Defendant.

Defendant incorrectly asserts that sovereign immunity shields the Act from pre-enforcement constitutional review because its enforcement mechanism is by a private action. Def's Mem. MTD 10. To the contrary, the Supreme Court has held that the *Ex parte Young* exception *is* available in a pre-enforcement action attacking a state law with a private enforcement mechanism, *see Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), and district courts have rejected analogous sovereign immunity claims in challenges to substantially similar laws. And accepting Defendant's argument would contradict long-established constitutional principles that federal courts may review pre-enforcement challenges to laws that chill constitutionally protected rights.

Defendant's motion to dismiss raises a factual challenge to subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Def's Memo MTD 1. A factual challenge to subject-matter jurisdiction contends that there is in fact no subject-matter jurisdiction, even if the pleadings are formally sufficient. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (2015). "In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Id.*

### 1. The *Ex parte Young* exception applies to Plaintiffs' claims because the Act is an ongoing violation of the First Amendment and Plaintiffs seek prospective relief.

Although Eleventh Amendment sovereign immunity generally bars federal-court actions against states, state agencies, and state officials acting in their official

2

capacity, "sovereign immunity is not absolute immunity." *Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps. v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012). A well-established exception to sovereign immunity exists, "grounded in traditional equity practice[,] that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Whole Woman's Health*, 595 U.S. at 39 (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine allows private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law. *Council 31*, 680 F.3d at 882.

To determine whether the *Ex parte Young* doctrine applies, a court "need only conduct a 'straightforward inquiry' into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002). Plaintiffs' amended complaint satisfies that inquiry: it alleges that the Act is an ongoing violation of the First Amendment, Am. Compl. ¶ 17–47, and seeks prospective relief in the form of a declaratory judgment and preliminary and permanent injunctions, Am. Compl. 12–13.

### 2. The terms of the Act expressly give Defendant enforcement power.

Defendant contends that Plaintiffs' amended complaint does not satisfy the first requirement—an ongoing violation of federal law, requiring defendant have "some connection with the enforcement of the act," *Ex parte Young*, 209 U.S. at 157—because, she asserts, Plaintiffs cannot show that she "has any authority to enforce

3

the Act against them" and has not threatened to do so. Def's Mem. MTD 8–9.
Defendant asserts that she has no enforcement authority with respect to the Act
because, although she may inquire into alleged violations brought to her attention
by an interested party, the power to inquire (supposedly) has no teeth. Def's Mem.
MTD 9. Defendant disclaims any authority under the Act at all, asserting that only
third parties may file complaints to enforce the Act. Def's Mem. MTD 9.

Defendant's assertion directly contradicts the express terms of the Act. It states:
"The Department shall inquire into any alleged violations of this Act, brought to its
attention by an interested party, to institute the actions for the penalties provided
in this Section and *to enforce the provisions of this Act*. In addition to the relief set
forth in Section 20, an employer shall be assessed a civil penalty of $1,000 for each
violation of Section 15, payable to the Department." 820 ILCS 57/25(a) (emphasis
added). The Act also empowers the Department to demand that an employer "cure"
any violation of the Act. 820 ILCS 57/25(b)(2), (b)(3), (c). And the Act acknowledges
that the Director may "exercise jurisdiction" over a complaint brought to the
Department alleging a violation of the Act and conduct "administrative enforcement
of the matter." 820 ILCS 57/25(b)(4)(C).

So, contrary to Defendant's assertion, she is not a passive party with no
enforcement "teeth" under the Act. And for purposes of *Ex parte Young*,
"enforcement" does not refer only to prosecutorial means of enforcement. *See* Black's
Law Dictionary (12th ed. 2024) (defining "enforce" as "[t]o give force or effect to (a
law, etc.)"). An official need not be the primary authority responsible for enforcing a

challenged law to establish a sufficient connection to be an appropriate defendant. *See 281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th. Cir. 2011); *see also Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1145–46 (8th Cir. 2005) (finding *Ex parte Young* exception applied where the attorney general had no authority to initiate criminal prosecution, but could only participate in a criminal proceeding if his assistance was requested by the assigned county attorney or the trial court asked him to sign indictments). Here, Defendant clearly "plays some role in enforcing" the Act, and that is enough. *Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir. 2018).

In a footnote, Defendant asserts that the Act's text providing that the Director may "decide[ ] not to exercise jurisdiction over the matter" and may "conclude[ ] administrative enforcement of the matter," 820 ILCS 57/25(b)(4)(C), has no effect because that language was imported wholesale from a different law. Def's Mem. MTD 10, n.1. Defendant provides no basis for this assertion. Courts must assume that the ordinary meaning of the language of a statutory text accurately expresses the legislative purpose. *Mueller v. City of Joliet*, 943 F.3d 834, 836 (7th Cir. 2019); *see also, Wragge v. Boeing Co.*, 532 F. Supp. 3d 616, 621 (N.D. Ill. 2021) (Valderrama, J.) ("As a general rule, a court presumes that the language of a statute manifests [legislative] intent."). "No rule of construction authorizes this court to declare that the legislature did not mean what the plain language of the statute imports, nor may [it] rewrite a statute to add provisions or limitations the legislature did not include." *DiFranco v. City of Chicago*, 589 F. Supp. 3d 909, 918

(N.D. Ill. 2022) (quoting *People v. Legoo*, 2020 IL 124965, 178 N.E.3d 1110, 1116 (Ill. 2020)). There is no basis to ignore the plain language of the Act, which makes clear that the Director may exercise jurisdiction and conduct administrative enforcement in response to a complaint.

### 3. Supreme Court caselaw supports the conclusion that sovereign immunity does not bar Plaintiffs' claim.

The Supreme Court denied a similar assertion of sovereign immunity in a pre-enforcement challenge to a statute that provided for a private right of action as the primary enforcement mechanism in *Whole Woman's Health*, 595 U.S. 30. At issue there was the Texas Heartbeat Act, which prohibited physicians from performing an abortion (a protected constitutional right at the time) except in a medical emergency. *Id.* at 35. The law did not grant state officials the power to bring criminal or civil enforcement actions but instead provided for enforcement through private civil actions. *Id.* The Court nevertheless held that the *Ex Parte Young* exception permitted the plaintiffs' claim to proceed against the executive director of the Texas Medical Board, the executive director of the Texas Board of Nursing, the executive director of the Texas Board of Pharmacy, and the executive commissioner of the Texas Health and Human Services Commission. *Id.* at 37, 45. Those "executive licensing official[s] may or must take enforcement actions" against medical professionals, successfully sued by private persons under the Heartbeat Act, for violating the requirements of their medical licenses under Texas law. *Id.* at 45. There, as here, state officials would only take action after a private party took some action to prompt enforcement of the law. Here, however, Defendant's

6

connection to enforcement is much more direct and apparent because the Act expressly grants Defendant enforcement power.

Defendant relies on a finding in *Whole Woman's Health* that a state court judge and state court clerk retained sovereign immunity, analogizing herself to the clerk because she "serves only 'to file cases as they arrive.'" Def's Mem. MTD 10 (quoting *Whole Woman's Health*, 595 U.S. at 39–40). But as the Court noted in *Whole Woman's Health*, the *Ex parte Young* exception does not normally permit federal courts to issue injunctions against state court judges and clerks. 595 U.S. at 39. That's because, as judicial officers, they do not enforce state laws as executive officials would. *Id*. But Defendant is an *executive* official, not a judicial official. And the Act gives Defendant more than just the power to file cases; the Act gives her powers to demand an employer cure a violation, to collect civil penalties, and to conduct administrative enforcement. Defendant is much more like the executive licensing defendants the Court held did *not* have sovereign immunity.

Defendant further asserts that Plaintiffs cannot show an ongoing violation of federal law because she (purportedly) does not intend to enforce the Act. Def's Memo MTD 10. But Defendant must do more than say during litigation that she might never prosecute Plaintiffs, *see Babbitt v. UFW Nat'l Union*, 442 U. S. 289, 302 (1979) (finding defendant's contention that the challenged statute had not yet been applied and may never be applied to plaintiffs' actions insufficient to challenge subject-matter jurisdiction where the statute on its face proscribed those actions), or that she does not intend to prosecute Plaintiffs, *see Citizens for Responsible Gov't*

*State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1192–93 (10th Cir. 2000) (finding defendant's contention that plaintiffs will not be prosecuted under the challenged statute "insufficient to overcome the chilling effect of the statute's plain language"). A government official's assurances that she will not enforce a statute cannot, by themselves, deprive a court of subject-matter jurisdiction because they "do not rule out the possibility that [she] will change [her] mind and enforce the law more aggressively in the future." *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019); *see also United Food & Commercial Workers Int'l Union v. IBP, Inc.*, 857 F.2d 422, 429 (8th Cir. 1988) (rejecting the argument that plaintiffs lacked standing because defendants did not plan to enforce an anti-picketing law against them); *Vt. Right to Life Comm. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000) (though the state had no intention of enforcing the law against plaintiffs, "there is nothing that prevents the State from changing its mind. It is not forever bound, by estoppel or otherwise, to the view of the law that it asserts in this litigation"); *Davidson*, 236 F.3d at 1192 (state's representations that it would not enforce the law against plaintiffs were "insufficient to overcome the chilling effect of the statute's plain language"). And Defendant's assertion that she will not enforce the Act is based on her misinterpretation of her authority under the Act, as set forth above. Defendant's misreading of the Act cannot support a finding that Plaintiffs face no credible threat of enforcement. *See Kucharek v. Hanaway*, 902 F.2d 513, 519 (7th Cir. 1990) (Attorney General's interpretation of statute was not binding because he may "change his mind . . . and he may be replaced in office"); *see also, Virginia v. Am*.

8

*Booksellers Ass'n*, 484 U.S. 383, 395 (1988) ("[A]s the Attorney General does not bind the state courts or local law enforcement authorities, we are unable to accept her interpretation of the law as authoritative.").

Defendant insists that the *Ex parte Young* exception is limited to state officials who threaten or are about to commence proceedings against a plaintiff. Def's Memo MTD 11–12 (citing cases). But *Whole Woman's Health* belies Defendant's assertion that there must be some imminent threat of enforcement for *Ex parte Young* to apply. There, the Court held that the *Ex parte Young* exception applied to executive licensing officials who "*may . . .* take enforcement actions against the petitioners." 595 U.S. at 535 (emphasis added). And the Supreme Court and the Seventh Circuit have found the threat of enforcement element is present in cases where a statute provided a private right of action. Indeed, in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014), the Court held that the credible threat of enforcement was "bolstered by the fact that authority to file a complaint with the Commission is not limited to a prosecutor or an agency." The Court found that, because the statute allowed any person with knowledge of the purported violation to file a complaint, the threat of enforcement was *increased. Id.* And in *303 Creative LLC v. Elenis*, the Court found a credible threat of enforcement where "anyone in the State [could] file a complaint against [plaintiff] and initiate 'a potentially burdensome administrative hearing' process." 600 U.S. 570, 583 (2023) (citation omitted). And the Seventh Circuit has held that standing for a pre-enforcement First Amendment challenge a "hunter harassment law" was supported by the fact that "government authorities

9

are not the only ones who may seek to enforce [it]. Hunters too may . . . decide . . . to enforce the law against plaintiffs." *Brown v. Kemp*, 86 F.4th 745, 768 (7th Cir. 2023).

### 4. Other federal courts have found that the *Ex parte Young* exception applies in legal challenges to laws almost identical to the Act.

District courts addressing challenges to laws similar to the Act—those that prohibit mandatory meetings where politics or religion are discussed and are enforced by a private right of action—have found that plaintiffs in those cases satisfied the *Ex parte Young* exception. *See Chamber of Commerce of the United States of America v. Bartolomeo*, No. 3:22-cv-1373 (D. Conn. 2023)[1] (addressing Conn. Gen. Stat. § 31-51q); *Minnesota Chapter of Associated Builders and Contractors, Inc. v. Walz*, 24-cv-536 (D. Minn. 2024)[2] (addressing Minn. Stat. § 181.531). In *Bartolomeo*, the Connecticut district court, relying on *Whole Woman's Health*, held that the plaintiffs' claims fell within the *Ex parte Young* exception, even though defendant Commissioner of the Connecticut Department of Labor claimed he would not investigate violations of the law. Ex. A, 48:21–49:17 (citing *Whole Women's Health*, 595 U.S. at 45). And in *Walz*, the Minnesota district court held it did not matter that defendant Commissioner of the Minnesota Department of Labor and Industry did not have exclusive or primary enforcement authority or pure traditional prosecutorial authority, Ex. B, 37:23–25, 38:1–4, 41:1–19, because

---

[1] The Connecticut district court denied the motion to dismiss in a bench decision. A copy of the transcript, Doc. 64, is publicly available and attached as Exhibit A.
[2] The Minnesota district court also denied the motion to dismiss from the bench. A copy of the transcript, Doc. 62, is publicly available and attached as Exhibit B.

the term "enforcement by the department" used in the statute was sufficient to establish a connection between defendant and enforcement, Ex. B, 41:16–19. Likewise, the language of the Act here—allowing Defendant to "exercise jurisdiction" and "conclude[ ] administrative enforcement," 820 ILCS 57/25(b)(4)(C)—is sufficient to establish a connection between Defendant and the Act's enforcement. Like the Minnesota and Connecticut district courts, this Court should find that Plaintiffs' claims fall within the *Ex parte Young* exception.

### 5. Long-established precedent allows pre-enforcement First Amendment challenges to laws that chill plaintiffs' speech.

If accepted, Defendant's assertion of sovereign immunity would effectively prevent pre-enforcement review of any First Amendment claim to a law enforced primarily through a private party. But that conclusion contradicts longstanding precedent that a person need not risk arrest or prosecution before bringing a pre-enforcement challenge under the First Amendment because of the danger that vital protected speech will be chilled due to a reasonable fear of prosecution. *See ACLU v. Alvarez*, 679 F.3d 583, 591 (7th Cir. 2012); *Goldhamer v. Nagode*, 621 F.3d 581, 586 (7th Cir. 2010). In pre-enforcement challenges to limitations on speech, "the chilling of protected speech may . . . alone qualify as a cognizable Article III injury, provided the plaintiffs 'have alleged an actual and well-founded fear that the law will be enforced against them.'" *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 474 (7th Cir. 2012) (quoting *Am. Booksellers Ass'n*, 484 U.S. at 393).

The Act chills Plaintiffs' protected speech, and Plaintiffs have a well-founded fear that if they continue their speech about politics or religion in mandatory

11

meetings, the Act will be enforced against them. It does not matter whether Defendant will *initiate* the enforcement or not. The lesson of *Whole Women's Health* is that the exception to sovereign immunity under *Ex parte Young* still applies even when the enforcement mechanism is primarily through private civil action. *See* 595 U.S. at 59 (Roberts, C. J., concurring in the judgment and dissenting in part) (stating that by making the private civil actions the enforcement mechanism, Texas "employed an array of stratagems designed to shield its unconstitutional law from judicial review"); *see also NRA of Am. v. Vullo*, 602 U.S. 175, 190 (2024) ("[A] government official cannot do indirectly what she is barred from doing directly").

States should not be allowed to evade review of statutes that chill the exercise of constitutional rights by making private causes of action their primary means of enforcement, as Illinois has attempted to do here. To accept Defendant's argument would significantly reduce the protection of constitutional rights, as Plaintiffs and other Illinois employers would be forced to choose between risking civil litigation and penalties under the Act or forgoing their protected speech. Faced with that choice, Plaintiffs and Illinois employers' First Amendment rights would be significantly chilled, as most will likely forgo their free speech rights by no longer speaking about politics or religion in mandatory meetings.

The *Ex parte Young* exception to sovereign immunity applies to Plaintiffs' claims. The case law demands it, the Supreme Court and the district courts addressing similar arguments have so held, and holding otherwise would undermine well-established constitutional principles.

**B.      Plaintiffs have Article III standing because they have pleaded the threat of concrete injury, and their requested relief would protect them against that injury.**

Plaintiffs have standing because they have alleged an intention to engage speech proscribed by the Act and face a credible threat of prosecution. *See Susan B. Anthony List*, 573 U.S. at 159.

In a pre-enforcement challenge like this one, "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* at 159 (quoting *Babbitt*, 442 U.S. at 298). And "[a] plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have threatened to prosecute him; the threat is latent in the existence of the statute." *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) (citations omitted). "[T]he existence of a statute implies a threat to prosecute, so pre-enforcement challenges are proper, because a probability of future injury counts as 'injury' for the purpose of standing." *Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010).

Defendant asserts that Plaintiffs cannot show a credible threat of enforcement because Defendant cannot enforce the Act unless an interested party brings her an alleged violation, and because Plaintiffs "present no evidence that any interested party intends to file a complaint against them." Def's Mem. MTD 14. But the rule for standing to bring a pre-enforcement challenge does not require a plaintiff to show an *actual* imminent prosecution; it is enough that the plaintiff *could* be

prosecuted at any time for "engag[ing] in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute." *Susan B. Anthony List*, 573 U.S. at 159.

Defendant maintains that Plaintiffs cannot meet the causation and redressability requirements for standing because, she asserts, Plaintiffs cannot identify relief that could be granted that would prevent third parties from bringing suits against them under the Act. Def's Mem. MTD 15. But a "plaintiff need not show absolutely that a favorable judgment would redress his injury; a probabilistic benefit from winning a suit is adequate." *Family & Children's Ctr. v. School City*, 13 F.3d 1052, 1058 (7th Cir. 1994) (quotation and citation omitted). Nor must Plaintiffs show that a favorable decision will relieve their *every* injury. *Massachusetts v. EPA*, 549 U.S. 497, 525 (2007).

Granting the relief Plaintiffs seek against Defendant would give Plaintiffs a probabilistic benefit: it would ensure that Defendant, at least, would not enforce the Act against them. And it would put third parties on notice that the Act is unconstitutional and thus unenforceable against Plaintiffs. *See Kemp*, 86 F.4th at 770 (finding that the possibility of enforcement where a law was declared unconstitutional "does not undercut redressability or standing").

Defendant insists that Plaintiffs cannot meet the causation and redressability requirements for standing for the same reasons sovereign immunity purportedly applies. Def's Mem. MTD 15 (citing *Holcomb*, 883 F.3d at 975). But that argument fails for the same reasons (above) that Defendant's sovereign immunity argument

fails. *See, e.g., 281 Care Comm.*, 638 F.3d at 633 (holding that a defendant state official does not "need to have the full power to redress a plaintiff's injury" for the *Ex parte Young* exception to apply).

### C. Plaintiff TMA has associational standing.

"Associational standing allows an organization to sue on behalf of its members even without a showing of injury to the association itself." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021) (quotations omitted). A plaintiff claiming association standing must show that: (1) at least one of its members would have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members. *Hunt v. Wash. State Apple Advert. Com'n*, 432 U.S. 333, 343 (1977).

Defendant asserts that TMA does not have associational standing under the first prong because TMA has not specifically identified a member by name. Def's Mem. MTD 16, 18. But TMA is not required to identify its members by name; at the pleading stage, TMA need only "provide some way of showing that at least one individual member has standing to sue on their own." *Prairie Rivers Network*, 2 F.4th at 1010. TMA is an association consisting of 815 member companies, most of which are small and mid-size manufacturers. Decl. Dennis LaComb, ¶ 6, Ex. B, Mot. Prelim. Inj. (Doc. 10-1). TMA's members include businesses owned by individuals with deep religious convictions who sometimes hold meetings or communicate with their employees about their religious views, businesses that do not support their employees organizing in a union and have communicated or would communicate

that position to their employees, and businesses that discuss political matters with employees in mandatory meetings. *Id*. ¶¶ 7–11. Defendant claims that it's possible that all TMA's member companies that wish to engage in conduct that would otherwise violate the Act "fall into one of the eight exceptions." Def's Mem. MTD 16. But there is enough evidence to show that at least some of TMA's members will *not* fit into one of the exceptions. For example, some of TMA's members are businesses owned by individuals with religious views, Decl. Dennis LaComb, ¶ 8, and those businesses will be subject to the Act, not exempt, because they are private (mostly manufacturing) companies, Decl. Dennis LaComb, ¶ 6, not institutions of higher learning, political organizations, a legislative body, or a religious organization. *See* 820 ILCS 57/35(5), (6), (7), or (8). And their religious speech couldn't be classified as required by law, 820 ILCS 57/35(1), necessary for the employee to perform their job duties, 820 ILCS 57/35(3), or anti-harassment or anti-discrimination training, or training intended to foster civil and collaborate workplace, 820 ILCS 57/35(4). Nor would those businesses be exempt under 820 ILCS 57/35(2) because their religious speech takes place during mandatory, not voluntary, meetings, Decl. Dennis LaComb, ¶ 8.

The evidence shows that "at least one individual member [of TMA] has standing to sue on their own." *See Prairie Rivers Network*, 2 F.4th at 1010. TMA has therefore properly alleged associational standing.

### D.    Plaintiff IPI has standing.

Defendant asserts that IPI lacks standing because its desired conduct is exempt from the Act under 820 ILCS 57/35(3)—which allows communication of

"information that is necessary for the employees to perform their required job duties"—because IPI alleges that its political communications at mandatory meetings are "important." Def's Mem. Mot. 17. But IPI has not alleged that these communications are *necessary* for all employees to perform their job duties, as the statute requires to qualify for the exemption. If any and all communications an employer deems "important" for employees to know fell under that exception, the exception would swallow the rule because any employer willing to pay an employee to listen to a political or religious message obviously deems that communication "important."

In any event, standing only requires that Plaintiffs show that they are engaging in conduct "arguably proscribed" by the Act. *See Kemp*, 86 F.4th at 762; *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022) ("*Susan B. Anthony List* makes clear that courts are to consider whether the plaintiff's intended conduct is 'arguably proscribed' by the challenged statute, not whether the intended conduct is in fact proscribed."). "[W]hen an ambiguous statute arguably prohibits certain protected speech, a reasonable fear of prosecution can provide standing for a First Amendment challenge." *Goldhamer*, 621 F.3d at 586 (7th Cir. 2010). Here, it is at least arguable that IPI's speech is prohibited and not covered by the exception of 820 ILCS 57/35(3), which means IPI has standing to challenge the prohibition.

Defendant also attempts to manufacture a factual issue by suggesting that the exemption under 820 ILCS 57/35(6), for § 501(c)(4) entities, could apply to IPI because it shares senior employees with Illinois Policy Action, which is such an

17

entity. Def's Mem. MTD 19. But IPI, not Illinois Policy Action, is a plaintiff in this case. And 820 ILCS 57/35(6) does not apply to IPI because it is *not* a § 501(c)(4) entity. Defendant wonders whether employees are on IPI or IPA time when they are required to attend mandatory meetings, Def's Mem. MTD 19—but the only evidence on this point before the Court shows that *IPI* holds mandatory staff meetings and retreats for *its* employees. *See* Am. Compl. ¶¶ 33–42; Decl. Matthew Paprocki, ¶¶ 3–12, Ex. A, Mot. Prelim. Inj. Defendant's baseless speculation that this evidence is false cannot defeat IPI's standing and does not warrant discovery or an evidentiary hearing at this stage of the proceedings.

Defendant's motion to dismiss should be denied. Plaintiffs have sufficiently shown that the *Ex parte Young* exception to sovereign immunity applies to Defendant in this case and Plaintiffs have standing to make their claims.

## II. This Court should enter a preliminary injunction because Plaintiffs have a likelihood of success on the merits of their claims and will suffer irreparable harm without one.

The Act's content-based prohibition on mandatory meetings in which political or religious matters are discussed violates Plaintiffs' First Amendment rights and should be preliminarily enjoined to prevent Plaintiffs from suffering irreparable harm during this litigation.

### A. The Act is a content-based restriction on Plaintiffs' speech, not a restriction on antiretaliatory conduct.

Defendant attempts to characterize the Act as a restriction on antiretaliatory conduct, Def's Mem. Opp PI 4–6, but because the Act restricts Plaintiffs' conduct based on *the content of their speech*, it is subject to First Amendment scrutiny, *see*

*Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) (holding that a statute implicates the First Amendment when it is "directed at" speech "in its practical operation"). A government's regulation of conduct is covered by the First Amendment when the government targets the conduct because of its expressive content. *Kemp*, 86 F.4th at 779. Here, the Act prohibits Plaintiffs from taking disciplinary action against an employee for not attending a mandatory meeting in which the employer speaks about politics or religion. The Act's prohibition relies entirely on Plaintiffs' speech: if the mandatory meeting involves speech about politics or religion, the Act prohibits taking disciplinary action against employees who do not attend, but the Act does not prohibit such disciplinary action if the mandatory meeting involves speech other than politics or religion.

The Eleventh Circuit rejected Florida's attempt to characterize a similar statute—one prohibiting employers from making employees attend any meeting that "espouses, promotes, advances, inculcates, or compels" certain beliefs about race, color, sex, or national origin—as a mere "ban on conduct." *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1275, 1277 (11th Cir. 2024). The Eleventh Circuit held that the law was a "classic—and disallowed—regulation of speech" because the only way to discern what mandatory meetings were prohibited was to determine the content of the speech in those meetings. *Id.* at 1277. The court explained that "[w]hen the conduct-not-speech defense is raised," one way courts can distinguish between the two is to "ask whether enforcement authorities must examine the content of the message that is conveyed to know whether the law has been

19

violated." *Id*. at 1278 (quotations omitted). When the conduct regulated depends on—and cannot be separated from—the ideas communicated, a law is functionally a regulation of speech. *Id*. Here, as in that case, the Act "prohibits mandatory employee meetings . . . only when those meetings include speech endorsing certain ideas," *id*., speech about politics or religion. Because the Act is a content-based speech regulation, the Court must apply strict scrutiny, an exacting standard. *Id*. at 1280.

Defendant's only attempt to distinguish *Honeyfund.com* is her assertion that the Florida law involved viewpoint-based restrictions on speech, and the Act does not. Def's Mem. Opp. PI 11. But that does not save the Act from strict scrutiny. Viewpoint discrimination is a form of content discrimination, but the First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibitions of speech based on its topic. *Reed v. Town of Gilbert*, 576 U.S. 155, 169 (2015). Here, the Act is content based because it "applies to particular speech because of the topic discussed or the idea or message expressed"—political or religious speech. *Id*. at 163. Therefore, it is subject to strict scrutiny analysis, which requires Defendant to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest. *Id*. at 171.

**B.    Plaintiffs are likely to succeed on the merits of their First Amendment claim because the Act cannot survive strict scrutiny.**

Defendant provides no defense of the Act under strict scrutiny analysis. She does not identify any compelling interest the Act supposedly serves, let alone explain how the Act is narrowly tailored to achieve such an interest, deeming such analysis

20

"irrelevant" because the Act supposedly "regulates conduct rather than speech." Def's Mem. Opp. PI 10.

The closest Defendant comes to providing a compelling interest for the Act is asserting that "the First Amendment allows the government to enact targeted protections for 'an unwilling recipient' of communications." Def's Mem. Opp. PI 8 (quoting *Rowan v. U.S. Post Off. Dep't*, 397 U.S. 728, 738 (1970)). Defendant cites no cases applying strict scrutiny that find that shielding an unwilling recipient from certain speech is a compelling government interest. (To Plaintiffs' counsel's knowledge, no such case exists.). Instead, Defendant cites cases involving the "right to be let alone," *Hill v. Colorado*, 530 U.S. 703, 718 (2000), either from intrusion at one's home, *Rowan*, 397 U.S. at 738 (mail to home); *Frisby v. Schultz*, 487 U.S. 474, 486 (1988) (picketing at a home), or for unwilling recipients in the public square, *Hill*, 530 U.S. at 716 (unwilling recipients near health care facilities); *Lehman v. City of Shaker Heights*, 418 U.S. 298, 302 (1974) (public transit system can prohibit paid political ads on its vehicles); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209 (1975) (restricting films showing nudity at drive-in movie theaters where the screen is visible from a public street or place). None of these cases holds that the "right to be let alone" is a compelling interest. And none stands for the proposition that an at-will employee is an unwilling listener of his employer's speech. Indeed, at-will employees are not unwilling listeners; they voluntarily joined their employer, and can quit at any time, and implicit in their employment is that they listen to what their employer says—an activity for which they are paid.

But even if shielding "unwilling" employees from employer speech were a compelling government interest—which it is not—Defendant does not, and cannot, explain how the Act is narrowly tailored to serve that interest. The Act is not limited to mandatory meetings at which *unwilling* employees hear discussion of political or religious matters; it bans speech at such meetings even if employees would listen to it voluntarily. *But see Hill*, 530 U.S. at 727 ("only attempts to address unwilling listeners are affected"). And the Act allows "interested parties" other than affected employees to enforce it, 820 ILCS 57/25, so that an employer will be subject to the prohibition on mandatory meetings about politics and religion regardless of whether the employees in attendance were willing listeners. Further, the Act's many exceptions mean that many employees who are "unwilling" (that is, who would not listen to the speech if the employer did not mandate it) will still be made to attend mandatory meetings. *See e.g.*, 820 ILCS 57/35(6) (exempting not-for-profit organization exempt from taxation under Section 501(c)(4), 501(c)(5), and 501(c)(6)). This type of "[u]nderinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 801 (2011).

The Act is a content-based restriction on speech and fails strict scrutiny, and Plaintiffs are therefore likely to succeed on the merits of their First Amendment claims.

**C.   Plaintiffs will suffer irreparable harm without an injunction.**

Plaintiffs will suffer irreparable harm without an injunction because their speech will be chilled by the possibility of complaints being filed against them, the costs of such litigation, and the risk of civil penalties.

Defendant asserts that Plaintiffs cannot show irreparable harm because they cannot identify any credible threats of enforcement. Def's Mem. Opp. PI 11–13. That argument about threatened enforcement fails for the same reason it fails in her motion to dismiss (see Section I, above). And "[u]nder Seventh Circuit law, irreparable harm is presumed in First Amendment cases." *Int'l Ass'n of Fire Fighters, Loc. 365 v. City of E. Chicago*, 56 F.4th 437, 450–51 (7th Cir. 2022). Defendant does not overcome this presumption. "A plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have threatened to prosecute him; the threat is latent in the existence of the statute." *Majors*, 317 F.3d at 721 (citations omitted).

Defendant's argument that Plaintiffs must specifically identify when the Act will be enforced against them to show irreparable harm has no basis in law. Indeed, the Seventh Circuit has held that a plaintiff's inability to know when a law will be enforced against him "*compounds* his chilling claims." *Bell v. Keating*, 697 F.3d 445, 455 (7th Cir. 2012) (emphasis in original). A plaintiff's assumed fear of future sanctions for engaging in protected speech is objectively reasonable: "[W]hen one cannot know what triggers the ordinance such that it will be enforced, he may fairly

assume that it can and will always be enforced and that total abstention from the protected activity is necessary to avoid arrest and prosecution." *Id.*

Defendant also asserts that "Plaintiffs' lack of diligence in prosecuting this suit" shows that Plaintiffs will suffer no irreparable harm. Def's Mem. Opp. PI 13. But Plaintiffs have in fact been diligent: Plaintiffs filed this lawsuit and their motion for preliminary injunction before the Act even took effect. Besides, "delay is only one among several factors to be considered; [the case law does] not support a general rule that irreparable injury cannot exist if the plaintiff delays in filing its motion for a preliminary injunction." *Chancey v. Ill. State Bd. of Elections*, 635 F. Supp. 3d 627, 643 (N.D. Ill. 2022) (quoting *Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir. 1979)). The only case Defendant cites in support of her argument is *Ty, Inc. v. Jones Grp., Inc.,* 237 F.3d 891 (7th Cir. 2001). But in that case the Seventh Circuit found irreparable injury despite plaintiff's *eight-month* delay in pursuing the preliminary injunction. *Id* at 903. The court found it important to determine whether the delay lulled defendant into a false sense of security or defendant had acted in reliance on the plaintiff's delay. *Id.* It is obvious that there is no possibility of that here.

### D. The balance of the harms and the public interest favor granting the preliminary injunction.

Defendant's assertion that the balance of the hardships weighs against a preliminary injunction relies entirely on her argument that Plaintiffs have not demonstrated a strong likelihood of success on the merits. Def's Mem. Opp. PI 15. Since Plaintiffs are likely to succeed on the merits, they need not show that the

24

balance of the harms overwhelmingly favors them. *Mays v. Dart,* 974 F.3d 810, 818 (7th Cir. 2020).

The balance of the harms does, however, overwhelmingly favor Plaintiffs. "[I]njunctions protecting First Amendment freedoms are always in the public interest" *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). The only hardship Defendant asserts is "workers' freedom of thought against arbitrary abridgements of freedom unconnected to any job requirement." Def's Mem. Opp PI 16. She does not set forth any hardship to herself or the state. And Defendant does not even explain how the Act protects an employee's freedom of thought from infringement by his employer. Simply listening to political or religious speech one disagrees with does not violate one's First Amendment right to free speech or thought. If it did, then speech in the public square, for example, could be banned on the basis that members of the public don't like it. *Cf. Snyder v. Phelps*, 562 U.S. 443, 458 (2011) ("speech cannot be restricted simply because it is upsetting or arouses contempt"). Further, the Act doesn't prevent employers from compelling an employee to speak generally or from firing an employee based on the employee's political views—nor does anything else in Illinois law. And the Illinois Human Rights Act, *not* the Act at issue here, prevents an employer from disciplining an employee based on that employee's religious views. 775 ILCS 5/2-102(E-5).

Any discomfort an employee may experience by having to listen to political or religious speech with which the employee disagrees is outweighed by the loss of the free speech rights of Plaintiffs and other employers in Illinois. *See Christian Legal*

*Society*, 453 F.3d at 867 (holding that a university's hardship in "being required to recognize a student organization it believes is violating the university's antidiscrimination policy" did not outweigh the loss of plaintiff's First Amendment rights). Plaintiffs have met the standards for a preliminary injunction, and this Court should grant their motion.

### E. The Court should grant a broad preliminary injunction against the Act's enforcement.

Finally, this Court should reject Defendant's argument that the preliminary injunctive relief in this case should be limited to Plaintiffs. *See* Def's Mem. Opp. PI 17. As Defendant acknowledges, Plaintiffs bring a facial First Amendment challenge. Def's Mem. Opp. PI 4. "[A] successful facial attack means the statute is wholly invalid and cannot be applied to *anyone*." *Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011) (emphasis in original). "Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court." *Secretary of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (7th Cir. 1984). "Facial unconstitutionality as to one means facial unconstitutionality as to all, regardless of the fact that the injunctive portion of the judgment directly adjudicated the dispute of only the parties before it." *Mulholland v. Marion County Election Bd.*, 746 F.3d 811, 819 (7th Cir. 2014) (rejecting the "oxymoronic argument" that a judgment finding a statute facially unconstitutional should apply only to plaintiffs). Broad preliminary relief is therefore appropriate in First Amendment facial challenges where there is a serious chill on protected

speech that extends beyond the parties. *See Ashcroft v. ACLU*, 542 U.S. 656, 670–71 (2004).

Because the Act likely violates the First Amendment on its face and threatens to seriously chill the protect speech of employers statewide, this Court should grant broad, statewide preliminary injunctive relief.

## Conclusion

Plaintiffs have Article III standing to bring their First Amendment challenge against the Act, and Defendant is not entitled to sovereign immunity. And Plaintiffs have shown that they are likely to succeed on the merits of their First Amendment claim against the Act, that without preliminary relief they will suffer irreparable harm, that traditional legal remedies are inadequate, and the balance of the hardships favor granting the preliminary injunction. This Court should therefore deny Defendant's motion to dismiss and enter a preliminary injunction barring enforcement of the Act's restriction on protected speech.

Dated: January 8, 2025

Respectfully submitted,
**Illinois Policy Institute *and*
Technology & Manufacturing
Association**

By: /s/ Jeffrey M. Schwab
One of their Attorneys

Jeffrey M. Schwab
Jacob Huebert
James McQuaid
LIBERTY JUSTICE CENTER
7500 Rialto Blvd., Suite 1-250
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
jhuebert@ljc.org
jmcquaid@ljc.org