**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Illinois Policy Institute and the Technology & Manufacturing Association, | |
| Plaintiffs, | Case No. 1:24-cv-06976 |
| v. | Hon. Franklin U. Valderrama |
| Jane R. Flanagan, in her official capacity as Director of the Illinois Department of Labor, | |
| Defendant. | |

## <u>DEFENDANT'S REPLY IN SUPPORT OF HER MOTION TO DISMISS</u>

This suit presents no "concrete, living contest[] between adversaries" but merely various "abstract, intellectual problems." *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998) (quotation omitted). Someone with a real fear of legal enforcement would be relieved to learn that the person they sued disclaims any ability or intention to enforce the law at issue. These Plaintiffs are not relieved, though, because their goal in filing suit was not to redress a concrete injury but rather to "obtain[] a speedy judicial determination of questions of constitutional law." *Fitts v. McGhee*, 172 U.S. 516, 530 (1899). "To this day," however, "many federal constitutional rights are as a practical matter asserted typically as defenses to state-law claims, not in federal pre-enforcement cases like this one." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 49–50 (2021). If a third party ever tries to enforce the Worker Freedom of Speech Act against Plaintiffs—which may never happen—they can assert their federal defenses at that time. But no controversy within this Court's jurisdiction lies between Plaintiffs and the Director of the Department of Labor.

### Background

Plaintiffs introduced no new factual materials in their opposition to the Director's motion to dismiss, so the factual record in this matter stands as it did when the Director filed her motion. Plaintiffs correctly acknowledge that, in this factual attack on subject-matter jurisdiction, the Court

may consider materials outside the complaint to ascertain whether it has jurisdiction. ECF 27 at 2; *see Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). First and foremost, the Director has sworn that the Act is enforced only by private parties: either an "aggrieved employee" under the private right of action, 820 ILCS 57/20, or an "interested party" who must file a complaint and then wait 180 days, with the Director powerless to halt any such suit, *id.* 57/25(b)–(d). *See* ECF 20-1, Declaration of Jane R. Flanagan ("Flanagan Decl."), ¶ 3. The Director does not understand any law to grant her power to enforce the Act beyond telling a defendant when a complaint has been filed and sending a right-to-sue letter after 180 days. *Id.* ¶¶ 4–12. The Director has no ability or intention to take affirmative enforcement measures. *Id.* ¶ 11. Plaintiffs' response does not present any contrary facts about the Director's understanding of her legal authority, so the record before the Court leaves no dispute on that point.

Plaintiffs also have not, in response, provided any new facts about the risk of any private party not before the Court seeking to enforce the Act against Plaintiffs. Neither is the Director aware of anyone who might wish to do so. *See id.* ¶ 13. Notably, the Act went into effect on January 1, 2025, so there has now been some time for one of Plaintiffs' employees or an interested party to give some indication that they wish to assert rights conferred by the Act. But, as far as the record before the Court shows, no such person exists.

Plaintiff the Technology & Manufacturing Association ("TMA") has declined to provide any additional facts about any of its members, instead resting on an argument that it does not need to do so as a matter of law. ECF 27 at 15–16. Plaintiff Illinois Policy Institute ("IPI") has provided no additional facts about its relationship with the Government Accountability Alliance ("IPA"), its sister organization exempt from the Act "for the purpose of communicating [its] political tenets or purposes." 820 ILCS 57/35(6). For instance, IPI does not provide any facts that might clarify

2

how many of the 42 employees listed on the groups' single shared website are jointly employed by both entities. *See* ECF 20-6 at 2–7. IPI concedes that the two groups "share[] senior employees," ECF 27 at 17; indeed, they share *all 14* senior employees, *see* ECF 20-2 at 7; ECF 20-3 at 7. IPI does not provide any new factual material to show that any employee works on IPI time rather than IPA time when he or she is allegedly required to attend mandatory meetings.

**Argument**

**I.      Plaintiffs cannot demonstrate that they overcome sovereign immunity or that they have Article III standing.**

The Act is enforced only by private parties whom Plaintiffs cannot identify and whom the Director cannot control. So Plaintiffs cannot establish the *Ex parte Young* exception to sovereign immunity because they have not sued any "officers of the state … who threaten and are about to commence proceedings" against them. 209 U.S. 123, 155–56 (1908). Plaintiffs likewise cannot prove Article III standing because their speculative injury stems from the remote possibility of private suits that could not, in any case, be prevented by relief against the Director.

**A.      The *Ex parte Young* exception does not apply because Plaintiffs have not sued a state official about to enforce the Act against them.**

Plaintiffs cannot prove, as they must to overcome sovereign immunity, that the Director is engaged in "an ongoing violation of federal law." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). "If the [defendant] official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation." *Tex. All. for Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022). The Director has sworn that she has neither authority nor intention to compel obedience with the Act, *see* ECF 20-1, Flanagan Decl., so she remains immune from suit under the Eleventh Amendment.

**1.      The Director lacks authority to enforce the Act.**

The Director possesses no "enforcement authority" with respect to the Act that this Court

3

"might enjoin [her] from exercising." *Whole Woman's Health*, 595 U.S. at 43. In opposition, Plaintiffs primarily contest the Director's interpretation of the statutory language, arguing that the Act confers more authority on the Director than she understands it to. *See* ECF 27 at 3–7. Failing that, Plaintiffs suggest that the mere act of sending out legal notices by "an *executive* official, not a judicial official," could constitute enforcement authority. *Id.* at 7. Both arguments fail.

A question provides a simple entry point for the statutory issue: Where is the Director's cause of action? This question is governed by Illinois law, not federal law. *See Whole Woman's Health*, 595 U.S. at 47 ("[State] courts and not this one are the final arbiters of the meaning of state statutory directions."); *contra* ECF 27 at 5 (Plaintiffs' reliance on federal statutory interpretation precedent). As the Director swears, and as Plaintiffs do not contest, the Director has no overarching powers beyond those conferred by specific Illinois statutes. ECF 20-1, Flanagan Decl., ¶¶ 4–6. So the Director's cause of action would need to be found within the Act itself.

Plaintiffs focus on the first sentence of section 25: "The Department shall inquire into any alleged violations of this Act, brought to its attention by an interested party, to institute the actions for the penalties provided in this Section and to enforce the provisions of this Act." 820 ILCS 57/25(a). This sentence confers no cause of action when read in context. *See In re Marriage of Goesel*, 102 N.E.3d 230, 235 (Ill. 2017) ("Words and phrases should not be viewed in isolation but should be considered in light of other relevant provisions of the statute."). The Director may "institute the actions … provided in this Section," 820 ILCS 57/25(a), but section 25 "provides" authority to bring civil suits only to third-party complainants, not the Director: "the interested party may initiate a civil action for penalties." *Id.* 57/25(c). The statute of limitations makes this point doubly clear, as "[a]ny claim or action filed under this Section" must follow a "complaint," *id.* 57/25(d), and the complaints can be filed only by interested parties, *id.* 57/25(b)(1).

The indefinite phrase "enforce the provisions of this Act," *id.* 57/25(a), also furnishes no cause of action. To see why, compare other statutes that the Director does enforce, each of which expressly confers that power on her. *See id.* 105/12(b) ("the Director … may bring any legal action necessary to recover the amount of the unpaid minimum wages"); *id.* 115/11(c) (empowering the Department "[t]o make complaint in any court of competent jurisdiction of violations of this Act"); *id.* 130/11 ("The Department shall also have a right of action on behalf of any individual who has a right of action under this Section."). Section 25 itself expressly confers a cause of action on interested parties but not the Director. *Id.* 57/25(b)–(e). The Illinois Supreme Court does not look favorably on attempts to imply causes of action beyond those expressly provided in a statute. *See Valerio v. Moore Landscapes, LLC*, 183 N.E.3d 105, 115 (Ill. 2021) ("[A] statute's provision for an express right of action prevents an implication of the same right of action as a matter of law.").

The Director has no cause of action. Plaintiffs point to stray language that seems to imply that she might, namely the word "cure" and the phrases "exercise jurisdiction" and "administrative enforcement." ECF 27 at 4; *see* 820 ILCS 57/25(b)(4). The Director acknowledged this language in her motion, ECF 20 at 10 n.1, but it has no effect under this Act. Illinois courts apply a tempered surplusage canon that cannot force otherwise unavailable readings: "every clause of a statute must be given a reasonable meaning, *if possible*, and should not be rendered meaningless or superfluous." *Schultz v. St. Clair Cnty.*, 201 N.E.3d 1111, 1117 (Ill. 2022) (emphasis added); *see also Crozer v. People*, 69 N.E. 489, 491 (Ill. 1903) ("if it can be prevented"). It is not "possible" to give meaning to the "cure," "jurisdiction," or "administrative enforcement" language in this Act. To have any meaning, these words would need a predicate cause of action that the General Assembly did not provide. As noted, section 25 was imported wholesale from a different law, *see* 820 ILCS 175/67 (verbatim provision), providing a simple explanation for this discrepancy.

That leaves only the Director's powers to provide notice of complaints filed by interested parties, *id.* 57/25(b)(2), and to send inconsequential right-to-sue letters that the interested parties do not even need to bring suit, *id.* 57/25(c). These notice provisions do not "specifically charge[] [the Director] with a duty to enforce" the Act. *Doe v. Holcomb*, 883 F.3d 971, 976 (7th Cir. 2018). They are, at most, "implementation of the statute in an administrative or ministerial sense" and therefore "not analogous to enforcing the [Act] through a civil or criminal prosecution." *Balogh v. Lombardi*, 816 F.3d 536, 546 (8th Cir. 2016). The rationale of *Ex parte Young*'s "chameleon-like legal fiction" is that "when a state official *violates the federal Constitution*, that official is 'stripped of his official or representative character' and thus also of any immunity defense." *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1050 (7th Cir. 2013) (emphasis added) (quoting *Ex parte Young*, 209 U.S. at 160). The exception strips immunity from "an official who acts unconstitutionally." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 (1984). The act of sending a notice of a suit—a suit brought by an unrelated third party—does not violate the Constitution and cannot nullify the Director's immunity.

## 2. The Director is not threatening enforcement against Plaintiffs.

Plaintiffs must also prove that the Director is in fact "violating, or planning to violate, federal law," *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015), regardless of the theoretical scope of her authority. As the Director explained in detail in her motion to dismiss, ECF 20 at 11–12, both *Ex parte Young* and the decisions upon which it relied limited their holdings to "officers of the state … who threaten and are about to commence [enforcement] proceedings." *Ex parte Young*, 209 U.S. at 155–56. The vast majority of the courts of appeals, including the Seventh Circuit, therefore hold that the *Ex parte Young* exception does not apply unless a state official is "threatening [the plaintiff] with an enforcement action." *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 983 (7th Cir. 2012); *see* ECF 20 at 12–

6

13 (collecting cases). The lopsided factual record before the Court proves that the Director is not threatening Plaintiffs with enforcement action. On the contrary, she has disclaimed under oath any authority or intention to enforce the Act against anyone. *See* ECF 20-1, Flanagan Decl., ¶¶ 3–12.

Plaintiffs' response cites none of the pertinent decisions on this point or makes any attempt to distinguish them. Instead, their discussion relies throughout on decisions not about the *Ex parte Young* exception at all. *See* ECF 27 at 7–10, 11. Most pertain to Article III standing, and two cited passages address wholly unrelated doctrines. *See id.* at 8–9 (citing *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 395 (1988) (standard for certifying a state-law question); *Kucharek v. Hanaway*, 902 F.2d 513, 519 (7th Cir. 1990) (void-for-vagueness)). As discussed below, Plaintiffs also cannot show a credible threat of enforcement for Article III standing. *See infra* Section I.B.1. But, setting that aside for now, Article III injury-in-fact and sovereign immunity are not identical. Standing sets the "irreducible constitutional minimum" and focuses on what "the plaintiff must have suffered." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Sovereign immunity, on the other hand, turns on the defendants' actions—whether "they [are] committing, or [are] about to commit, some specific wrong or trespass to the injury of the plaintiffs' rights." *Fitts*, 172 U.S. at 529. No facts suggest that the Director is about to do anything at all to Plaintiffs.

As to threatened enforcement, the only case on which Plaintiffs rely that even discussed *Ex parte Young* is *Whole Woman's Health*, 595 U.S. 30. The central holding of *Whole Woman's Health* was directly adverse to Plaintiffs. It emphasized that "a federal court exercising its equitable authority may enjoin named defendants from taking specified unlawful actions," *id.* at 44, and Plaintiffs have specified no unlawful action by the Director. *Whole Woman's Health* allowed claims to go forward on the pleadings against certain officials "who may or must take enforcement actions" tied to the challenged law. *Id.* at 45–46. Seizing on the word "may" (while covering

7

"must" with an ellipsis), Plaintiffs argue that *Whole Woman's Health* impliedly abrogated *Ex parte Young*'s centuries-old requirement of threatened enforcement. ECF 27 at 9. One "may" is a slender basis for such a dramatic conclusion. Indeed, the *Whole Woman's Health* plurality later "agree[d]" with the rule that plaintiffs "must show at least a credible threat of [an enforcement] action against them." 595 U.S. at 47. The plurality held that, "at the motion to dismiss stage," the plaintiffs had sufficiently alleged that they "will be the target of an enforcement action," which "allow[ed] this suit to proceed." *Id.* at 47–48. Under factual attack, Plaintiffs must not only allege but also prove that they "will be the target of an enforcement action" by the Director. *Id.* They cannot do so.

**B.    Plaintiffs cannot demonstrate Article III standing because their injuries are speculative and would not be redressed by an injunction against the Director.**

"To obtain forward-looking relief, the plaintiffs must establish a substantial risk of future injury that is traceable to the [Director] and likely to be redressed by an injunction against [her]." *Murthy v. Missouri*, 603 U.S. 43, 69 (2024). These fundamentals apply with full force to First Amendment cases; for instance, *Murthy* was a First Amendment case, *id.* at 54. Plaintiffs are wrong that the bare "existence" of the Act, ECF 27 at 13, creates a justiciable case or controversy.

**1.    Plaintiffs cannot prove injury because there is no credible threat of enforcement against them.**

Plaintiffs still present no evidence of "a credible threat of enforcement" of the Act against them. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014). Any enforcement depends entirely on a future suit by a third party, either under the private right of action, 820 ILCS 57/20, or the interested-party provision, *id.* 57/25. Plaintiffs have shown "no actual knowledge," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411 (2013), that any employee or interested party even objects to their meetings or communications, let alone intends to take legal action about them. The Director's factual attack called Plaintiffs to "the burden of coming forward with competent proof that standing exists." *Apex Digital*, 572 F.3d at 444. Put to the test, Plaintiffs have failed.

Plaintiffs' response instead relies on exclusively legal arguments. They point out that the possibility of private enforcement can sometimes render injury more likely, *see* ECF 27 at 9–10, which is true enough when the facts support such a theory of injury. For instance, in *Brown v. Kemp*, 86 F.4th 745 (7th Cir. 2023), individual hunters could enforce a "hunter harassment law" against plaintiffs, *id.* at 768, and the plaintiffs testified about fraught encounters with "irate" hunters who "detained them for hours at a time," *id.* at 754. In *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023), the Supreme Court noted that the court of appeals had held that the chance of private complaints bolstered standing, but "no party challenge[d]" standing before the Supreme Court, *id.* at 583. The pertinent district court decision had expressly found that it was "likely that a complaint will be filed" against the plaintiff. *303 Creative LLC v. Elenis*, 2017 WL 4331065, at *5 (D. Colo. Sept. 1, 2017). Likewise, in *Susan B. Anthony List*, the Supreme Court detailed the history of enforcement against the plaintiff and determined that "there [was] a real risk of complaints" from the plaintiff's political opponents. 573 U.S. at 164. In contrast, Plaintiffs offer, at best, "speculation about the decisions of independent actors," which cannot "establish that injury based on potential future [harm] is certainly impending." *Clapper*, 568 U.S. at 414.

Plaintiffs then retreat even further to an argument that they do not need any showing of likely enforcement, full stop. They contend that, in the First Amendment context, "the threat [to prosecute the plaintiff] is latent in the existence of the statute," ECF 27 at 13 (quoting *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003)), and that, as a result, they need not "show an *actual* imminent prosecution," *id.* (emphasis in original). Read in total isolation, Plaintiffs' quoted language from *Majors v. Abell* seems irreconcilable with *Susan B. Anthony List*, which was also a First Amendment challenge, 573 U.S. at 155, and which nevertheless examined in detail the "facts" before the Court as to "the prospect of future enforcement," *id.* at 165. But the tension lies only in

9

Plaintiffs' misreading of *Majors*. That decision did not eliminate the requirement of a factually credible threat in the Seventh Circuit. Indeed, just the year after *Majors* was decided, plaintiffs in two cases attempted this same over-reading of the opinion, and the Seventh Circuit rejected it both times. In *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485 (7th Cir. 2004), the plaintiff argued "that the threat of enforcement inherent in the statute chilled" its speech, *id.* at 489, but the plaintiff still lacked standing because it "fail[ed] to tie this theoretical harm to an actual and imminent threat of enforcement," *id.* at 490. In *Lawson v. Hill*, 368 F.3d 955 (7th Cir. 2004), another plaintiff "relie[d] heavily" on *Majors* to argue "that the mere existence of the [challenged] statute establishes a threat of prosecution," *id.* at 957. The opinion by Judge Posner, who had also authored *Majors*, first noted that the *Majors* plaintiff "had in fact been in some danger of being prosecuted." *Id.* at 958. The Seventh Circuit then demanded "a reasonable basis for concern that [the plaintiff] might be prosecuted," found none, and held there was no standing. *Id.* at 959.

So the Seventh Circuit has rejected the view that a threat of enforcement inheres in any enacted statute; rather, the "latent" threat that *Majors* identified pertains especially to criminal statutes enforceable by the defendant prosecutor. *Majors* reasoned that "most people are frightened of violating criminal statutes." 317 F.3d at 721. The cases cited by *Majors* involved criminal penalties. *See American Booksellers*, 484 U.S. at 392 (plaintiffs "will have to take significant and costly compliance measures or risk criminal prosecution"); *Hoover v. Wagner*, 47 F.3d 845, 847 (7th Cir. 1995) ("pain of criminal contempt"); *Sequoia Books, Inc. v. Ingemunson*, 901 F.2d 630, 632, 634 (7th Cir. 1990) (standing supported by the plaintiff's prior convictions). Before *Majors*, the Seventh Circuit summarized the holding of *American Booksellers*, 484 U.S. 383, thus: "a threat of prosecution is credible when a plaintiff's intended conduct runs afoul of a criminal statute." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 687 (7th Cir.

10

1998). After *Majors*, cases finding a latent threat have also largely related to criminal statutes. *See Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012) (plaintiff "need not wait to be arrested to bring suit"); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 594 (7th Cir. 2012) ("exposing the organization and its employees to arrest and criminal punishment"). Criminal statutes are characterized not only by severe penalties but also by numerous local prosecutors with discretion to enforce them. The Seventh Circuit has emphasized this feature of criminal laws in finding a credible threat of prosecution. *See Kemp*, 86 F.4th at 768 ("The fear of prosecution becomes more realistic where a larger group of officials has enforcement power, especially with broad discretion … ."). In this case, on the other hand, the Director cannot initiate enforcement of the Act. Only private parties can. And Plaintiffs are unable to provide any facts suggesting that anyone is even considering doing so. Plaintiffs have not established a credible threat of enforcement.

### 2. Plaintiffs cannot prove causation and redressability because no relief granted against the Director could prevent their alleged injuries.

Plaintiffs also identify no relief that could be granted by this Court to prevent any eventual suits against them under the Act. Interested parties need only file a complaint with the Department and wait 180 days, and then they may file suit. *See* 820 ILCS 57/25(b)(1), (c). The Director cannot stop them if they wish to do so. *See* ECF 9-1 at 4 (same point by Plaintiffs). When a statute thus consigns enforcement to "private rights of action," public officials "cannot cause the plaintiffs injury by enforcing the private-action statutes," and "any potential dispute plaintiffs may have with future private plaintiffs could not be redressed by an injunction running only against public prosecutors." *Hope Clinic v. Ryan*, 249 F.3d 603, 605 (7th Cir. 2001). Plaintiffs contend that an injunction against the Director would gain them the "probabilistic benefit" that the Director "at least, would not enforce the Act against them." ECF 27 at 14 (citing *Family & Children's Ctr., Inc. v. School City of Mishawaka*, 13 F.3d 1052, 1058 (7th Cir. 1994)). But they would win no

benefit at all, not even a probabilistic one. Plaintiffs' desired injunction would do nothing.

Plaintiffs fall back to an assertion that enjoining the Director "would put third parties on notice that the Act is unconstitutional and thus unenforceable." ECF 27 at 14. This slip exposes the fundamental flaw in their case for redressability. "[R]edressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) (quotation and alteration omitted, emphasis in original). Plaintiffs forget that "[r]emedies … operate with respect to specific parties," not "on legal rules in the abstract." *California v. Texas*, 593 U.S. 659, 672 (2021) (quotation omitted). A "statute cannot be repealed by a district-court opinion," *Wis. Right to Life*, 366 F.3d at 490, but Plaintiffs openly say that is how they hope to win relief. Article III does not authorize the advisory opinion about the constitutionality of this Act that Plaintiffs seek. *See Muskrat v. United States*, 219 U.S. 346, 361–62 (1911) (no jurisdiction where any judgment would "amount[] in fact to no more than an expression of opinion upon the validity of the acts in question").

### C.     The Connecticut and Minnesota decisions are inapposite.

The district court rulings in Connecticut and Minnesota have no contrary persuasive value. The challenged laws in Connecticut and Minnesota were not "almost identical" to this Act, ECF 27 at 10; rather, they were completely different in their enforcement mechanisms.

In Connecticut, "[t]he Attorney General, upon complaint of the Labor Commissioner, shall institute civil actions to recover the penalties" for violations of the challenged law. Conn. Gen. Stat. § 31-69a(c); *see id.* § 31-69a(a) (providing civil penalty for all statutes in chapter 557, where the law in question is found). The district court cited that express enforcement authority in denying Connecticut's motion to dismiss, a fact that Plaintiffs do not mention. *See* ECF 27-1 at 49:9–12.

In Minnesota, the plaintiffs sued the Commissioner of the Department of Labor, who has

12

general authority to "enter without unreasonable delay and inspect places of employment" and to "issue subpoenas" with respect to the challenged law. *See* Minn. Stat. § 175.20 (granting such authority as to all of chapter 181, including *id.* § 181.531). Subpoenas represent "coercive powers of investigation" and thus inflict "immediate injury" that "informal investigation" does not. *Gen. Fin. Corp. v. F.T.C.*, 700 F.2d 366, 371 (7th Cir. 1983). The challenged Minnesota law also charges the Commissioner to put out a mandatory poster describing the requirements of the law, Minn. Stat. § 181.531, subdiv. 3, and the Commissioner can then "inspect places of employment" to ensure compliance, *id.* § 175.20. The district court cited this duty in denying the motion to dismiss. *See* ECF 27-2 at 41:22–24, 43:6–8. Finally, Minnesota appealed the adverse ruling on sovereign immunity, and the district court indefinitely stayed the litigation, despite the plaintiffs' argument that doing so would curtail their speech. *See Minn. Chapter of Associated Builders & Contractors, Inc. v. Ellison*, 2024 WL 5151038, at *3–4 (D. Minn. Dec. 16, 2024).

## II. TMA fails to allege or prove associational standing.

TMA neither facially alleges nor factually proves its associational standing. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002 (7th Cir. 2021), is directly on point and requires dismissal. TMA contends that, through allegations and avowals about its "members" writ large, it has presented "enough evidence to show that at least some of TMA's members will" be injured. ECF 27 at 16. The plaintiff in *Prairie Rivers* made this exact argument to no avail. *See* 2 F.4th at 1009–10. The *Prairie Rivers* plaintiff alleged: "Individual members of [the plaintiff] live near, study, work, and recreate in and around, the [disputed pollution site]." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, No. 18-cv-2148, ECF 1 ¶ 13 (C.D. Ill. May 30, 2018) (Exhibit 1). The plaintiff alleged that it had "more than 1,000 members," *id.* ¶ 11, just as TMA now stresses that it has "815 member companies," ECF 27 at 15. But facts about an association's membership in general, even when combined with a large membership, "cannot assure [a court]

13

that at least one individual member—and not those individual members as a group—has standing to sue." *Prairie Rivers*, 2 F.4th at 1010. Instead, "plaintiff-organizations [must] make specific allegations establishing that at least one identified member ha[s] suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). TMA's vague allegations, ECF 8 ¶¶ 6–7, 10, 13, 45–47, and equally imprecise sworn statements, ECF 10-1 ¶¶ 7–11, do not allege or prove associational standing.

### III. IPI fails to allege or prove standing, or at the very least there are factual disputes that the Court must resolve before proceeding any further.

IPI neither facially alleges nor factually proves that its "intended future conduct is arguably proscribed by" the Act. *Susan B. Anthony List*, 573 U.S. at 162 (quotation and alteration omitted).

First, the Act exempts communications "necessary for the employees to perform their required job duties." 820 ILCS 57/35(3). IPI avows that it is "important for the functioning of [IPI] to communicate about political matters" and that "[s]taff morale and team cohesion depend on *every staff member* knowing what [IPI's] various teams and experts are working on." ECF 10 ¶¶ 9–10 (emphasis added). "Team morale and connection to the organization, as well as idea generation, would all suffer if [IPI] had to conduct staff meetings without providing policy-related information to *all staff*." *Id.* ¶ 11 (emphasis added). IPI's "team must be able to continue discussing these political and policy matters freely at mandatory staff meetings." *Id.* ¶ 12. The Director pointed out that these avowals, which she has not disputed, prove that IPI's communications are "necessary" to job duties and thus exempt. ECF 20 at 17–18. Unwilling to take yes for an answer, IPI tries to draw a sharp line between "important" and "necessary" communications. ECF 27 at 17. But IPI swore to much more than just the word "important." IPI detailed under oath why, given its political mission, its employees all need to hear about political matters to do their jobs well. The Act exempts such communications. So IPI has only a "notional or subjective fear of chilling

14

[that] is insufficient to sustain a court's jurisdiction under Article III." *Keating*, 697 F.3d at 454.

Second, IPI's sister organization IPA is exempt from the Act, ECF 20-3 at 1; 820 ILCS 57/35(6); and IPI and IPA jointly employ many employees, ECF 20-2 at 7; ECF 20-3 at 7. IPI protests that "the only evidence on this point before the Court shows that *IPI* holds mandatory staff meetings and retreats for *its* employees." ECF 27 at 18 (emphases in original). That is wrong. The Director has presented evidence that raises a dispute as to whether any IPI time is involved. For example, IPI swears that "the communications department" holds mandatory meetings, ECF 10 ¶ 8; yet as of November 2023, the same person served as Vice President of Communications for both IPI and IPA, ECF 20-2 at 1, 7; ECF 20-3 at 1, 7. It is revealing that, faced with a relatively simple question about its operations, IPI responds with only heated rhetoric, not with any facts supporting standing. ECF 27 at 17–18. The Director "has challenged the truth of the jurisdictional facts underlying [IPI's] allegations, and that factual dispute about the court's adjudicatory competency must be resolved before the court can address the merits." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 281 (7th Cir. 2020); *see also Murthy*, 603 U.S. at 49–50, 58 (standing required to enter a preliminary injunction). The Director has proposed discovery that would allow the Court to decide this issue and others pertaining to IPI's standing based on facts. *See* ECF 20-10, 20-11. If the Court does not dismiss this suit outright, then the only proper next step would be discovery and an evidentiary hearing on the existence of subject-matter jurisdiction.

## Conclusion

The complaint should be dismissed for lack of subject-matter jurisdiction without leave to amend and without prejudice. *See McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 535 (7th Cir. 2022); *Flynn v. FCA US LLC*, 39 F.4th 946, 954 (7th Cir. 2022). In the alternative, the Court should dismiss TMA, authorize service of the Director's proposed discovery, and set this matter for an evidentiary hearing only on IPI's standing.

15

Dated: January 22, 2025

Alex Hemmer
R. Henry Weaver
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
*alex.hemmer@ilag.gov*
*robert.weaver@ilag.gov*
(312) 814-3000

Respectfully submitted,

KWAME RAOUL,
Attorney General of Illinois, on behalf of
Defendant Jane R. Flanagan

By:  */s/ R. Henry Weaver*
      Assistant Attorney General

16