IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS POLICY INSTITUTE and THE TECHNOLOGY & MANUFACTURING ASSOCIATION, | |
| Plaintiffs, | No. 24-cv-06976 |
| | Judge Franklin U. Valderrama |
| v. | |
| JANE R. FLANAGAN, in her official capacity as Director of the Illinois Department of Labor, | |
| Defendant. | |

**ORDER**

Free speech is a bedrock principle of democracy in the United States. In the marketplace of ideas, discussion about politics and religion has always been fertile ground for debate and disagreement. Recognizing the latter, the Illinois General Assembly found it to be "in the public policy interests of the State for all working Illinoisans to have protections from mandatory participation in employer-sponsored meetings if the meeting is designed to communicate an employer's position on religious or political matters." 820 ILCS 57/5. The Assembly therefore passed the Worker Freedom of Speech Act (the Act), which became effective on January 1, 2025 and bans any sort of adverse action against employees who "decline[] to attend or participate in an employer-sponsored meeting or decline[] to receive or listen to communications from the employer … if the meeting or communication is to communicate the opinion of the employer about religious matters or political matters." *Id.* 57/15(1).

According to Plaintiffs Illinois Policy Institute (IPI) and Technology & Manufacturing Association (TMA), the Act violates Plaintiffs' First Amendment rights to free speech. R. 8,[1] Am. Compl. Plaintiffs sued Defendant Jane R. Flanagan, in her official capacity as Director of the Illinois Department of Labor (the Director), seeking a declaratory judgment regarding the invalidity of the Act. *Id.* Plaintiffs also filed a motion for a preliminary injunction, seeking an order enjoining the Director from implementing and enforcing the Act. R. 9, Mot. Prelim. Inj. The Director filed a motion to dismiss for lack of subject matter jurisdiction based on Eleventh Amendment sovereign immunity and Plaintiffs' lack of Article III standing. R. 19, Mot. Dismiss. For the following reasons, the Court grants the Director's motion to dismiss. Because the Court finds that it lacks subject matter jurisdiction, it terminates Plaintiffs' motion for a preliminary injunction.

## Legal Standard

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But district courts may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists." *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Apex Digital*, 572 F.3 at 444 (cleaned up).[2] "[A] proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

The Director has raised a factual challenge, as she has submitted evidence calling the Court's jurisdiction into question. *Apex Digital*, 572 F.3 at 444; *see also Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999) (factual challenge arises "[w]here evidence pertinent to subject matter jurisdiction has been submitted").

## Background

### A. The Act

The Act, which went into effect on January 1, 2025, provides that an employer "may not discharge, discipline, or otherwise penalize, threaten to discharge, discipline, or otherwise penalize, or take any adverse employment action against an

---

[2]This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

employee" who engages in certain protected activities. 820 ILCS 57/15. The Act defines three types of protected activity. The primary type is to "decline[] to attend or participate in an employer-sponsored meeting or decline[] to receive or listen to communications from the employer . . . if the meeting or communication is to communicate the opinion of the employer about religious matters or political matters." *Id.* 57/15(1). The others derive from the first: an employer may not retaliate "as a means of inducing an employee" to attend or listen, and an employer may not retaliate against an employee who reports "a violation or a suspected violation" of the Act. *Id.* 57/15(2)–(3). There are eight exceptions to the Act's protections. *See id.* 57/35. For example, the Act does not limit "voluntary" attendance at meetings or receipt or communications, nor does it prohibit mandatory meetings at which an employer communicates "to its employees any information that is necessary for the employees to perform their required job duties." *Id.* 57/35(2)–(3).

Central to the Director's motion to dismiss is her ability to enforce the Act. More broadly, as she points out in her motion to dismiss, the Director lacks general enforcement powers that would apply to the Act. R. 20, Memo. Dismiss at 3. The Illinois Civil Administrative Code creates the Department of Labor (the Department), 20 ILCS 5/5-15, but grants it only aspirational powers, such as "to foster, promote, and develop the welfare of wage earners." *Id.* 1505/1505-15. The Director has no overarching authority of investigation or enforcement as to Chapter 820 of the Illinois Compiled Statutes, where employment laws are found. *See* R. 20-1, Flanagan Decl. ¶¶ 4–6. Instead, each Illinois statute sets forth the Director's specific powers under

that statute. Memo. Dismiss at 3 (citing, *inter alia*, 820 ILCS 105/7 (Minimum Wage Law); *id.* 115/11 (Wage Payment and Collection Act)).

The Act itself creates two enforcement mechanisms: a private right of action for an "aggrieved employee," 820 ILCS 57/20, and a provision whereby an "interested party" may bring an alleged violation to the attention of the Director, *id.* 57/25. The parties focus on the latter mechanism, which authorizes the Department to "inquire into any alleged violations" that are "brought to its attention by an interested party, to institute the actions for the penalties provided in this Section and to enforce the provisions of this Act." *Id.* 57/25(a).

Section 25 lays out the complaint process, providing that (1) the interested party files a complaint with the Department, (2) the Department notifies the named party of the complaint, after which the named party may contest or cure the alleged violation, and (3) depending on how the named party responds, the Department may issue a "notice of right to sue to the interested party." 820 ILCS 57/25(b). On the third step, Section 25 provides that "[t]he Department issues a notice of right to sue to the interested party, if one or more of the following has occurred: (A) the named party has cured the alleged violation to the satisfaction of the Director; (B) the Director has determined that the allegation is unjustified or that the Department does not have jurisdiction over the matter or the parties; or (C) the Director has determined that the allegation is justified or has not made a determination, and either has decided not to exercise jurisdiction over the matter or has concluded administrative enforcement of the matter." *Id.* 57/25(b)(4). If the Department does not take action

within 180 days after service of the notice of complaint to the parties, by issuing a notice of right to sue or otherwise, then "the interested party may initiate a civil action for penalties." *Id.* 57/25(c). Under this Section, an employer is assessed a civil penalty of $1,000 per violation payable to the Department. *Id.* 57/25(a). "An interested party who prevails in a civil action" receives "10% of any statutory penalties assessed." *Id.* 57/25(e).

The Director submitted a declaration in support of her motion to dismiss, in which she states that she does not understand the Act, or any other part of the Illinois Compiled Statutes, to grant her power to enforce the Act beyond informing a defendant when a complaint has been filed against it and sending the "notice of right to sue" after 180 days. Flanagan Decl. ¶¶ 4–12. She also states that, as of December 20, 2024, she was not aware of any "interested party" who intended to file a complaint under the Act against IPI. *Id.* ¶ 13.

**B. Plaintiffs**

IPI is a 501(c)(3) nonprofit organization that engages in speech on "political" matters. Specifically, IPI engages in, and publishes research related to, public policy from a perspective that favors, among other things, civil and personal liberties; effective, efficient, honest, and transparent government; limited government; free markets; and workers' freedom to choose whether to join a labor union. R. 10, Paprocki Decl. ¶¶ 3, 8. IPI regularly conducts mandatory staff meetings and twice-yearly retreats where the organization's views on questions of public policy are expressed. *Id.* ¶¶ 4–7. Not all the communications at IPI's meetings are necessary for

*all* employees present to perform their job duties; that is, not every IPI employee's job directly relates to every political matter IPI discusses. *Id.* ¶¶ 6, 9–11.

IPI's president and CEO, Matthew Paprocki's declaration states that, even if the meetings are not necessary for every employee, it is important for the functioning of IPI to communicate about political matters with its employees, such as in mandatory meetings. Paprocki Decl. ¶ 9. According to Paprocki, IPI believes that each of its employees should know what IPI's various teams and experts are working on, and that the quality of the organization's work is improved when staffers not working on a specific policy-related matter can bring an interesting idea or new perspective on how to approach an issue. *Id.* ¶ 10. Team morale, connection to the organization, and idea generation would all suffer if IPI were required to conduct staff meetings without providing policy-related information to all staff. *Id.* ¶ 11.

TMA is a "501(c)(6) independent trade organization that focuses on assisting and promoting small and mid-size manufacturers, by, among other things, providing information, training, resources, and advocacy for and on behalf of its members." R. 10-1, LaComb Decl. ¶ 3; *see also* R. 20-8. Many of TMA's members have communicated political and religious matters to their employees in mandatory meetings. LaComb Decl. ¶ 7. TMA's members wish to continue to discuss political and religious matters with their employees, including communications in which those employees are required as a condition of their employment to listen. *Id.* ¶ 11.

The Director moves to dismiss Plaintiffs' lawsuit under Federal Rule of Civil Procedure 12(b)(1).

## Analysis

The Director contends that the Court lacks subject matter jurisdiction because: (1) Plaintiffs cannot establish the *Ex parte Young* exception to sovereign immunity because they have not sued an "officer[] of the state . . . who threaten[s] and [is] about to commence proceedings" against them, 209 U.S. 123, 155–56 (1908); and (2) Plaintiffs cannot show Article III standing, as their injuries depend on the speculative possibility of private suits against them and no relief granted against the Director could prevent such suits. Memo. Dismiss. The Court starts with the Director's sovereign immunity argument.

The Eleventh Amendment provides, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend XI. Eleventh Amendment sovereign immunity generally bars federal lawsuits against states, state agencies, and state officials acting in their official capacities. *Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012); *see also Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). The Supreme Court created an exception to this bar, however, in *Ex parte Young*, allowing "private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law." *Council 31*, 680 F.3d at 882 (cleaned up). Essentially, the Supreme Court said that "a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Green v. Mansour*, 474 U.S. 64, 68 (1985)

(cleaned up). Under *Ex parte Young*, "federal courts cannot repeal state laws"; they can at most "prevent[] state officials from enforcing the challenged statute, regulation, or agency action in the future based on its incompatibility with federal law." *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 521–22 (7th Cir. 2021). The exception is "narrow." *Whole Woman's Health*, 595 U.S. at 39.

To determine whether the *Ex parte Young* doctrine applies, the Court "need only conduct a 'straightforward inquiry' into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002). As the Director argues, since she raises a factual challenge to jurisdiction, Plaintiffs "bear[] the burden of coming forward with competent proof that [jurisdiction] exists." Memo. Dismiss at 8 (quoting *Apex Digital*, 572 F.3d at 444). From the Director's perspective, Plaintiffs cannot prove either element. Memo. Dismiss at 8.

First, to establish "an ongoing violation of federal law," Plaintiffs must "direct" the Court to some "enforcement authority the [Director] possesses in connection with [the Act] that a federal court might enjoin [her] from exercising." *Whole Woman's Health*, 595 U.S. at 43; *see also Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir. 2018) ("[A] plaintiff must show that the named state official plays some role in enforcing the statute in order to avoid the Eleventh Amendment."). A violation is not "ongoing" if the defendant official lacks "the power to enforce, modify, or rescind" the challenged policy. *Driftless Area Land Conservancy*, 16 F.4th at 515. Second, Plaintiffs must

9

show that the Director is "about to commence proceedings, either of a civil or criminal nature, to enforce against [them] an unconstitutional act." *Ex parte Young*, 209 U.S. at 156; *see also Holcomb*, 883 F.3d at 977 (claim dismissed where "[t]he Attorney General has not threatened to do anything"). The Court starts with the Director's enforcement powers under the Act.

## I.    The Director's Authority to Enforce the Act

Recall, the Director takes the position that she possesses no "enforcement authority" under the Act that the Court can "enjoin [her] from exercising." Memo. Dismiss at 9 (quoting *Whole Woman's Health*, 595 U.S. at 43). The Director argues that the Act only gives her the authority to "inquire into any alleged violations," but not even independently—such alleged violations must be brought to her attention by an "interested party." 820 ILCS 54/25(a). This inquiry power, she posits, has no teeth, as she does not even have the power to issue subpoenas to support her inquiry. Memo. Dismiss at 9 (citing Flanagan Decl. ¶ 7). Moreover, only third parties, not the Director, have the power to file complaints to start a possible suit. *Id.* (citing 820 ILCS 57/25(b), (d)). Even her power to "issue[] a notice of right to sue" is divorced from the merits: it issues whether the Director believes the allegation was "cured," "unjustified," or "justified," or even if the Director "has not made a determination." *Id.* (citing 820 ILCS 57/25(b)(4)). And, even if the Director fails to issue a notice of right to sue, an interested party "may initiate a civil action for penalties" after 180 days, *id.* at 9–10 (citing 820 ILCS 57/25(c)), a fact that Plaintiffs concede, *id.* at 10 (citing R. 9-1, Pls.' Memo. Prelim. Inj. at 4). Therefore, argues the Director, she "was

not specifically charged with a duty to enforce" the Act through Section 25, and indeed "cannot do anything . . . to prosecute a violation of" the Act, meaning she retains her sovereign immunity. *Id.* (quoting *Holcomb*, 883 F.3d at 976–77).

Predictably, Plaintiffs disagree, taking the position that the Act explicitly gives the Director enforcement power, in that it provides that "[t]he Department shall inquire into any alleged violations of this Act, brought to its attention by an interested party, to institute the actions for the penalties provided in this Section and *to enforce the provisions of this Act*." R. 27, Resp. at 4 (quoting 820 ILCS 57/25(a) (emphasis in Response)). Moreover, point out Plaintiffs, the Act empowers the Department to demand that an employer "cure" a violation of the Act, and also acknowledges that the Director may "exercise jurisdiction" over a complaint brought to the Department alleging a violation of the Act and conduct "administrative enforcement of the matter." *Id.* (quoting 820 ILCS 25/b). Therefore, argue Plaintiffs, the Director is not merely a passive party with no enforcement "teeth" under the Act. *Id.*

Plaintiffs also argue—and the Director does not dispute—that, for purposes of *Ex parte Young*, "enforcement" does not refer only to prosecutorial means of enforcement. Resp. at 4 (citing Black's Law Dictionary (12th ed. 2024) (defining "enforce" as "[t]o give force or effect to (a law, etc.)")). The Court agrees. And Plaintiffs are correct that the Director need not be the primary authority responsible for enforcing a challenged law in order to satisfy *Ex parte Young*. *Id.* at 4–5 (citing *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th. Cir. 2011); *see also Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139,

1145–46 (8th Cir. 2005)). The question then, is whether the Director plays "some role in enforcing the statute," such that enjoining her role in that enforcement would stop a constitutional violation. *Holcomb*, 883 F.3d at 975–76.

The Court now turns to the parties' arguments about what powers the plain language of the Act gives to the Director. *See* R. 28, Reply at 4 (citing Flanagan Decl. ¶¶ 4–6 (the Director has no overarching powers beyond those conferred by specific Illinois statutes)). The Court applies Illinois law to the statutory interpretation. *Id.* (citing *Whole Woman's Health*, 595 U.S. at 47 ("[State] courts and not this one are the final arbiters of the meaning of state statutory directions.")).

Starting with the Director's power "to institute the actions for the penalties provided in this Section and to enforce the provisions of this Act," 820 ILCS 57/25(a), the Court agrees with the Director that, in context, this sentence confers no cause of action on the Director. Reply at 4 (citing *In re Marriage of Goesel*, 102 N.E.3d 230, 235 (Ill. 2017) ("Words and phrases should not be viewed in isolation but should be considered in light of other relevant provisions of the statute.")). The "actions" provided in Section 25 are limited to interested third parties' authority to initiate civil actions. 820 ILCS 57/25(c). This limitation is bolstered by the statute of limitations provision, which states that "[a]ny claim or action filed under this Section must be made within 3 years after the alleged conduct *resulting in the complaint*." *Id.* 57/25(d). Only third parties can bring complaints. *Id.* 25(b)(1).

True, as Plaintiffs point out, the Director can demand that an employer "cure" alleged violations. Resp. at 4 (citing 820 ILCS 57/25(b)). But, as the Director argues

and as her counsel noted during oral argument,[3] regardless of the action taken during the 180-period following service of the notice of complaint to the parties, an interested party can file a civil lawsuit; that is all roads lead to the interested party being able to file a lawsuit. Memo. Dismiss at 9–10 (citing 820 ILCS 57/25(c)). So, enjoining the Director from demanding that employers cure alleged violations would not stop interested parties from being able to file civil suits. *See Whole Woman's Health*, 595 U.S. at 44) ("Supposing the attorney general did have some enforcement authority under S. B. 8, the petitioners have identified nothing that might allow a federal court to parlay that authority, or any defendant's enforcement authority, into an injunction against any and all unnamed private persons who might seek to bring their own S. B. 8 suits.").

As to the language providing that the Director has the power to "enforce the provisions of the Act," the Court again agrees with the Director that such vague language, in itself, does not provide her with meaningful enforcement power: Section 25 and Section 20 provide express rights of action to interested third parties and to employers. Reply at 5 (citing 820 ILCS 25(a), (b)); 820 ILCS 20; *see also Minnesota Chapter of Associated Builders & Contractors v. Ellison*, 2025 WL 2526268, at *4 (8th Cir. Sept. 3, 2025) (holding Commissioner of Minnesota's Department of Labor and Industry was immune from the plaintiff's challenge to a similar law, where the law provided the Commissioner the "authority to 'enter . . . and inspect places of employment' and to 'investigate facts, conditions, practices or matters as the

---

[3]The Court held oral argument on the motion to dismiss on June 11, 2025. R. 35.

commissioner deems appropriate to enforce the laws' within her jurisdiction. Although this section is titled 'Enforcement' and gives the Commissioner power 'to enforce' the laws within her jurisdiction, the use of 'enforce' is not dispositive. The substance of the law is.") (citing *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544–45 (2012)). And, as the Director points out, other statutes explicitly provide the Director with a cause of action. Reply at 5 (citing, *inter alia*, 820 ILCS 105/12(b) ("the Director . . . may bring any legal action necessary to recover the amount of the unpaid minimum wages"); *id.* 115/11(c) (empowering the Department "[t]o make complaint in any court of competent jurisdiction of violations of this Act")).

The closer call relates to language contained in Section 25(b)(4)(C), which provides that, before issuing a right-to-sue letter, the Director may decline "jurisdiction" or "conclude[] administrative enforcement of the matter." 820 ILCS 57/25(b)(4)(C). The Director argues that such language is surplusage that has no effect under this Act, and was merely imported wholesale from a different law, the Day and Temporary Labor Services Act (which provides the Director with administrative investigation and enforcement powers in other sections). Memo. Dismiss at 10 n.1 (citing 820 ILCS 175/67, 55, 70–75). Plaintiffs retort that "[n]o rule of construction authorizes this court to declare that the legislature did not mean what the plain language of the statute imports, nor may [it] rewrite a statute to add provisions or limitations the legislature did not include." Resp. at 5–6 (citing *DiFranco v. City of Chicago*, 589 F. Supp. 3d 909, 918 (N.D. Ill. 2022) (quoting *People v. Legoo*, 178 N.E.3d 1110, 1116 (Ill. 2020)). There is no reason, argue Plaintiffs, to

14

ignore the plain language of the Act, which explicitly states that the Director may exercise jurisdiction and conduct administrative enforcement in response to a third-party complaint. *Id.* at 6. In reply, the Director argues that under Illinois law, "every clause of a statute must be given a reasonable meaning, *if possible*, and should not be rendered meaningless or superfluous." Reply at 5 (quoting *Schultz v. St. Clair Cnty.*, 201 N.E.3d 1111, 1117 (Ill. 2022) (emphasis in Reply); citing *Crozer v. People*, 69 N.E. 489, 491 (Ill. 1903) ("if it can be prevented")). It is not "possible," contends the Director, to give meaning to "jurisdiction" or "administrative enforcement," as, to give them meaning, these words would need a predicate cause of action that the General Assembly did not provide. *Id.*

Determining the meaning of Section 25(b)(4)(C) presents an issue of statutory interpretation. "The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the statutory language, given its plain and ordinary meaning." *Chapman v. Chicago Dep't of Fin.*, 220 N.E.3d 1080, 1085 (Ill. 2023) (cleaned up). As stated above, in determining the meaning of a statute, "[e]ach word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous." *Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 963 N.E.2d 918, 923 (Ill. 2012). True, as Plaintiffs point out, the Court must give effect to the plain language of the statute, but here, as the Director argues, there is no other language in the Act that makes doing so "possible." Reply at 5.

None of the cases cited by either party presents a similar situation, where a section of a statute includes language imported verbatim from another statute and which makes little, if any, sense in the context of the statute being construed. "[I]n ascertaining the meaning of a statute, a court should not read language in isolation, but must consider it in the context of the entire statute." *In re Marriage of King*, 802 N.E.2d 1216, 1221–22 (Ill. 2003). Applying these principles of statutory construction, the Court's reading of Section 25(b)(4)(C), in the context of the full text of the Act itself—combined with Director Flanagan's statement that she does" not understand the Act or any other source of law to grant me authority to exercise 'jurisdiction' or undertake 'administrative enforcement,' 820 ILCS 57/25(b)(4)(C), as to alleged violations of the Act beyond the procedural steps outlined in subsection 25(b), which are triggered by a complaint from an interested party," Flanagan Decl. ¶ 12[4]—lead to a finding that this Section does not provide the Director with enforcement power under the Act.

Plaintiffs rely heavily on *Whole Woman's Health*. In that case, Texas enacted a law, the Heartbeat Act, that allowed for private civil actions against physicians for knowingly performing or inducing an abortion in certain circumstances. 595 U.S. at 35–36. A group of plaintiffs sued a Texas judge and court clerk and the executive directors of various medical licensing boards, among others, seeking to enjoin those

---

[4]The Court recognizes, as Plaintiffs point out, that the Director's interpretation of the Act is not binding. Resp. at 8 (citing, *inter alia, Kucharek v. Hanaway*, 902 F.2d 513, 519 (7th Cir. 1990) (Attorney General's interpretation of statute was not binding because he may "change his mind . . . and he may be replaced in office")). However, the Court may still consider her interpretation and whether the Illinois Supreme Court is likely to defer to it. *See Kucharek*, 902 F.2d at 519.

individuals from taking any action to enforce the statute. *Id.* at 36–37. The Supreme Court evaluated each party's role in enforcing the statute to determine whether the *Ex parte Young* exception applied. As to the judge and clerk, the Court found that the law did not implicate the *Ex parte Young* doctrine, as the role of judges and clerks is not fairly characterized as enforcing statutes in the way executive or administrative officials might; rather, judges and their staff "work to resolve disputes" between litigants pursuant to statutes. *Id.* at 39. Indeed, noted the Court, the clerks merely docket the disputes; the law gave them no power to "pass on the substance of the filings they docket" or to refuse a complaint on the merits. *Id.* at 40. On the other hand, the executive licensing directors fell within the scope of *Ex parte Young*'s exception to sovereign immunity, as Texas law imposed a duty on them to enforce a law regulating or prohibiting abortion, a duty preserved by the Heartbeat Act's savings provision. *Id.* at 45–47.

Plaintiffs contend that the Director is like the executive directors of the various medical and health-related boards and commissions in *Whole Women's Health*. But, as stated above, the Heartbeat Act in *Whole Women's Health* explicitly imposed on the "licensing-official defendants a duty to enforce a law that 'regulate[s] or prohibit[s] abortion,' a duty expressly preserved by S. B. 8's saving clause. *Whole Woman's Health*, 595 U.S. at 47. Here, as discussed above, neither the Act nor any other part of the Illinois Compiled Statutes imposes any such duty on the Director. The Court agrees with the Director that she is more akin to the immune court clerks

in *Whole Woman's Health*, as she serves only "to file cases as they arrive." Memo. Dismiss at 10 (citing *Whole Woman's Health*, 595 U.S. at 40).

The out-of-Circuit district court cases cited by Plaintiffs do not move the needle, as those cases are distinguishable. Resp. at 10 (citing *Chamber of Commerce of the United States of America v. Bartolomeo*, 3:22-cv-1373 (D. Conn. 2023); *Minnesota Chapter of Associated Builders and Contractors, Inc. v. Walz*, 24-cv-536 (D. Minn. 2024)). Plaintiffs argue that *Bartolomeo* is persuasive because the district court held that the plaintiffs' claims fell within the *Ex parte Young* exception, even though defendant Commissioner of the Connecticut Department of Labor claimed he would not investigate violations of the law. *Id.* (citing R. 27-1, *Bartolomeo* Tr. at 48:21–49:17). However, as the Director points out in reply, the challenged law provided that, "[t]he Attorney General, upon complaint of the Labor Commissioner, shall institute civil actions to recover the penalties" for violations of the challenged law; the district court relied on that enforcement authority in finding that immunity did not apply. Reply at 12 (citing *Bartolomeo* Tr. at 49:9–12). And Plaintiffs point to the Minnesota district court's finding that it did not matter that defendant Commissioner of the Minnesota Department of Labor and Industry did not have exclusive or primary enforcement authority or pure traditional prosecutorial authority, because the term "enforcement by the department" used in the statute was sufficient to establish a connection between defendant and enforcement. Resp. at 10 (citing R. 27-2, *Walz* Tr. at 37:23–25, 38:1–4, 41:1–19). The Director filed a notice of

supplemental authority after briefing closed,[5] advising that the Eighth Circuit had reversed the district court's decision, finding that, even though the Commissioner had the power to "investigate" employers and the law gave the Commissioner the power "to enforce" the laws in her jurisdiction, where the Commissioner had no independent authority to enforce the Chapter, the court found that the Commissioner's duties were ministerial and she was subject to sovereign immunity. *Minnesota Chapter of Associated Builders & Contractors v. Ellison*, 2025 WL 2526268, at *4 (8th Cir. Sept. 3, 2025). The Court agrees that this case supports the Director's position.

All in all, the Court agrees with the Director that she is not a proper defendant under *Ex parte Young*, as her role in the Act is "ministerial or administrative." While the Court could end its analysis as this juncture, the Court proceeds to address the Director's alternative argument, that she is not threatening enforcement against Plaintiffs.

## II.   Threatened Enforcement

The Director argues in the alternative, that, even if she had enforcement authority under the Act, she is still protected by sovereign immunity because Plaintiffs have not proven an "ongoing violation of federal law." Memo. Dismiss at 10 (quoting *Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011)). That is, Plaintiffs have failed to show, as required, that the Director is "threatening [the plaintiff] with an enforcement action." *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 983 (7th Cir. 2012). As stated above,

---

[5]The Court gave Plaintiffs an opportunity to respond to the notice of supplemental authority, R. 37, Plaintiffs did not do so.

Director Flanagan states in her declaration that, not only does she not believe that she has the authority to enforce the Act, but she also does not intend to do anything else with respect to the Act, including any investigation or enforcement activities (if she had such authority). Flanagan Decl. ¶¶ 9–12.

In support, the Director cites numerous pre- and post-*Ex parte Young* decisions which all stand for the proposition that, for the exception to sovereign immunity to apply, there must be an impending threat. Memo. Dismiss at 11–12 (citing, *inter alia*, *Fitts v. McGhee*, 172 U.S. 516, 529 (1899) ("[T]he defendants in each of those cases [in which immunity did not apply] were officers of the state, specially charged with the execution of a state enactment alleged to be unconstitutional, but under the authority of which, it was averred, they were committing, or were about to commit, some specific wrong or trespass to the injury of the plaintiffs' rights."); *Sherman v. Cmty. Consol. Sch. Dist. 21 of Wheeling Twp.*, 980 F.2d 437, 441 (7th Cir. 1992) ("Plaintiffs have not articulated any theory under which *Ex parte Young* supports a suit against the Attorney General, who has never threatened the [plaintiffs] with prosecution and as far as we can tell has no authority to do so."); *Minn. RFL Republican Farmer Lab. Caucus v. Moriarty*, 108 F.4th 1035, 1037 (8th Cir. 2024) ("*Ex parte Young* only applies to officials who threaten and are about to commence civil or criminal proceedings to enforce unconstitutional policies."); *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1414, 1416 (6th Cir. 1996) ("[T]he phrase 'some connection with the enforcement of the act,'" as used in *Ex parte Young*, "does not diminish the requirement that the official threaten and be about to commence

proceedings.")). Therefore, reasons the Director, because the evidence on the record—Director Flanagan's declaration—shows that she has no authority or intention to enforce the Act, she therefore remains immune from suit. Memo. Dismiss at 13.

In response, Plaintiffs cite numerous cases standing for the proposition that the Director's statement that she does not intend to enforce the Act against Plaintiffs, on its own, does not undermine the fact that there is an ongoing violation of federal law. Resp. at 7 (citing, *inter alia*, *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 302 (1979) (finding defendant's contention that the challenged statute had not yet been applied and may never be applied to plaintiffs' actions insufficient to challenge subject-matter jurisdiction where the statute on its face proscribed those actions); *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019) (a government official's assurances that she will not enforce a statute cannot, by themselves, deprive a court of subject-matter jurisdiction because they "do not rule out the possibility that [she] will change [her] mind and enforce the law more aggressively in the future."). Plaintiffs also point to several Supreme Court and Seventh Circuit cases in which the courts found standing to exist where a statute provided a private right of action, as does the Act. *Id.* at 9–10 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (the credible threat of enforcement was "bolstered by the fact that authority to file a complaint with the Commission is not limited to a prosecutor or an agency"); *303 Creative LLC v. Elenis*, 600 U.S. 570, 583 (2023) (credible threat of enforcement existed where "anyone in the State [could] file a complaint against [plaintiff] and initiate 'a potentially burdensome administrative hearing' process."); *Brown v. Kemp*,

86 F.4th 745, 768 (7th Cir. 2023) (standing for a pre-enforcement First Amendment challenge a "hunter harassment law" was supported by the fact that "government authorities are not the only ones who may seek to enforce [it]. Hunters too may . . . decide . . . to enforce the law against plaintiffs.")).

The Director correctly points out in reply, however, that apart from *Whole Women's Health* (which the Court addresses below), none of the cases cited by Plaintiffs address sovereign immunity or the *Ex parte Young* exception. Reply at 7. And, while Article III's injury-in-fact requirement and *Ex parte Young*'s "ongoing violations of federal law" requirement are similar, they are not identical. That is, as the Director notes, standing sets the "irreducible constitutional minimum" and focuses on what "the plaintiff must have suffered," *id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)), while the *Ex parte Young* doctrine asks whether the defendants are "committing, or [are] about to commit, some specific wrong or trespass to the injury of the plaintiffs' rights," *id.* (quoting *Fitts*, 172 U.S. at 529). Even accepting the authority cited by Plaintiffs as persuasive as to the sovereign immunity analysis, the Court nonetheless finds the cases distinguishable here.

First, recall that the Director brings a factual challenge. So, Plaintiffs "bear[] the burden of coming forward with competent proof that [jurisdiction] exists." Memo. Dismiss at 8 (quoting *Apex Digital*, 572 F.3d at 444). In the face of the Director's declaration that she does not plan to enforce the Act against Plaintiffs, Plaintiffs present no evidence to the contrary. Indeed, Plaintiffs' counsel admitted during oral argument on June 11, 2025 that he was not aware of any forthcoming complaints

under the Act against Plaintiffs; nor have Plaintiffs since filed on the docket anything indicating that a complaint has been filed. So, the sole evidence before the Court as to a threat of enforcement is the Director's affidavit.

Second, the cases supporting standing where a statute allows for private enforcement all had more in the record supporting an injury-in-fact than exists here. In *Susan B. Anthony List*, there existed a history of past enforcement of the statute against the plaintiff. 573 U.S. at 164. Similarly, in *303 Creative*, 600 U.S. at 583, the court found standing to exist where the state had "a history of past enforcement against nearly identical conduct." 600 U.S. at 583. And, in *Brown*, the plaintiffs "had encounters with hunters and law enforcement that took them to the brink of being formally charged with violating [the challenged law] while engaging in actions protected by the First Amendment." 86 F.4th at 769. No such history exists here regarding the Act's enforcement generally against employers similarly positioned to Plaintiffs, and certainly not as to Plaintiffs themselves, as discussed above.

As noted above, Plaintiffs rely on *Whole Women's Health*, arguing that it "belies [the Director's] assertion that there must be some imminent threat of enforcement for *Ex parte Young* to apply," as "[t]here, the Court held that the *Ex parte Young* exception applied to executive licensing officials who '*may* . . . take enforcement actions against the petitioners.'" Resp. at 9 (quoting 595 U.S. at 535 (emphasis in Response)). But as the Director states in reply, later in the decision, the Court "agree[d]" with the rule that plaintiffs "must show at least a credible threat of [an enforcement] action against them." 595 U.S. at 47. And, the Court was presented with

23

a facial challenge, and found that "at the motion to dismiss stage," the plaintiffs had sufficiently alleged that they "will be the target of an enforcement action," which "allow[ed] this suit to proceed." *Id.* at 47–48. Again, here on a factual challenge, Plaintiffs must prove that they "will be the target of an enforcement action" by the Director. *Id.*

Finally, Plaintiffs argue that "a person need not risk arrest or prosecution before bringing a pre-enforcement challenge under the First Amendment because of the danger that vital protected speech will be chilled due to a reasonable fear of prosecution," and therefore sovereign immunity does not apply. Resp. at 11 (citing *ACLU v. Alvarez*, 679 F.3d 583, 591 (7th Cir. 2012); *Goldhamer v. Nagode*, 621 F.3d 581, 586 (7th Cir. 2010)). But again, Plaintiffs cite only Article III standing cases. And, the Supreme Court in *Whole Women's Health* stated in relevant part that it agreed with the principle that, that "to maintain a suit consistent with this Court's *Ex parte Young* and Article III precedents, it is not enough that petitioners feel inhibited or chill[ed] by the abstract possibility of an enforcement action against them," the plaintiffs had done enough to survive a facial motion to dismiss by "plausibly alleg[ing] that S. B. 8 has already had a direct effect on their day-to-day operations." 595 U.S. at 47. Here, to the contrary, Plaintiffs have presented no evidence that the Act has had any affect on their operations.[6] A vague allegation,

---

[6] Plaintiffs' counsel stated at oral argument that Plaintiffs stopped having mandatory meetings because they were concerned about action taken against them, which he "believe[d]" was in Paprocki's declaration. As the Director's counsel noted during oral argument, Paprocki's declaration does not so state, and Plaintiffs have not presented any other evidence supporting that assertion.

unsupported by evidence, that Plaintiffs worry about the Act chilling their speech, is insufficient to satisfy the second element of *Ex Parte Young* in the face of a factual challenge to subject matter jurisdiction.

Accordingly, the Court finds that Plaintiffs' suit is barred against the Director by sovereign immunity. The Court need not address the Director's alternative Article III arguments. Plaintiffs' claims against the Director are dismissed without prejudice based on the doctrine of sovereign immunity under Federal Rule of Civil Procedure 12(b)(1).

## Conclusion

The Court grants the Director's Motion to Dismiss [19]. Plaintiffs' claims against the Director are dismissed without prejudice and without leave to amend based on the doctrine of sovereign immunity under Federal Rule of Civil Procedure 12(b)(1). Civil case terminated.

Date: 9/30/2025

United States District Judge
Franklin U. Valderrama